**J. Ashlee Albies,** OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Viktoria Lo,** OSB No. 175487
Email: viktoria@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR, 97205
Telephone: (971) 229-1241

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MEGHAN OPBROEK**, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation, **Portland Police Bureau Officers JOHN DOEs 1 and 2** (the names John Doe being fictitious, as the true names and shield numbers are not presently known) in their individual capacities;<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Violations of Civil Rights: 42 U.S.C § 1983; Battery (state tort); Assault (state tort); Negligence (state tort)<br><br>**DEMAND FOR JURY TRIAL** |

INTRODUCTION

1.

This is a civil rights action. On the evening of June 25, 2020, following the police murder of

George Floyd and as a part of the watershed racial justice protests that followed, Plaintiff

Meghan Opbroek attended a demonstration located at the Portland Police Bureau's North Precinct. There, she joined a group Portlanders in support of Black Lives Matter and against police violence. Within approximately twenty minutes after she arrived, Opbroek witnessed PPB officers subject demonstrators to excessive uses of force, including firing flashbang grenades and impact munitions ostensibly to get the demonstrators to leave, but with the purpose of punishing the protesters. Opbroek filmed the police and stood in passive resistance with demonstrators while chanting and yelling at police officers. In response to Opbroek's First Amendment activity, Defendants launched a flashbang grenade directly at her which exploded on her body. As a result of Defendants' conduct, Opbroek suffered severe pain, and physical and mental harms.

## PARTIES

2.

Plaintiff Meghan Opbroek (hereinafter "Opbroek" or "Plaintiff"), at the time of filing and at all material times, was a resident of Multnomah County, State of Oregon.

3.

Defendant City of Portland ("City" or "defendant") is and at all material times hereto has been a municipal corporation in the State of Oregon. The Portland Police Bureau ("PPB"), a department of the City, is the law enforcement agency of the City.  As a local governmental entity, the City of Portland is a suable person under 42 U.S.C. § 1983. At all material times, the City of Portland employed the John Doe defendants. At all material times, the John Doe defendants were acting pursuant to the City of Portland's laws, customs, and/or policies. Per ORS 30.285(1), the city must indemnify its officers for their tortious acts and is therefore liable for the purposes of this action by Plaintiff. On information and belief, the decision to indiscriminately use force against plaintiffs was made at a sufficiently high level as to be policy decision of the City of Portland.

4.

PAGE - 2   COMPLAINT

Plaintiff does not know the names of the JOHN DOE defendants, and so is suing them under fictitious names.

5.

Defendants John Does 1 and 2 (hereinafter "Individual Defendants") are or at all material times were a PPB officers, employees, and agents of the PPB acting under color of law and are sued in their individual capacities.

**TORT CLAIM NOTICE**

6.

Prior to the institution of this action, Plaintiff provided timely notice of her claim to all necessary parties pursuant to ORS 30.275.

**FACTUAL ALLEGATIONS**

7.

Meghan Opbroek is a white woman and advocate for racial equality and justice. She is a Clinical Mental Health Therapist and Academic and Career Advisor. Having lived a majority of her life in Oregon and with an awareness of Oregon's racist history, Opbroek believes it is her duty and responsibility to support the Black Lives Matter movement.

8.

On May 25, 2020, Minneapolis Police Department Officer Derek Chauvin knelt on the neck of a Black man named George Floyd while Mr. Floyd repeatedly said he could not breathe and begged for his mother. Video footage of the last moments of Mr. Floyd's life spread over the internet and sparked outrage and mass demonstrations across the country and the globe, including in Portland, Oregon.

9.

Beginning around May 29, 2020, and for approximately one hundred days, people protested and demonstrated in Portland, declaring Black Lives Matter, demanding justice for George

PAGE - 3   COMPLAINT


ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Floyd, demanding justice for those killed by PPB officers, and demanding an end to police

violence often with specific calls to defund PPB and abolish the police ("the demonstrations").

10.

The demonstrations routinely occurred at symbolic locations, such as the Multnomah County

"Justice Center" in downtown Portland which houses PPB's central precinct and the Multnomah

County Sheriff's Office and jail, as well as the PPB's North Precinct building located in a

historically Black and African American neighborhood.

11.

In the weeks following the police killing of George Floyd, Opbroek regularly attended and

supported the demonstrations in support of Black Lives Matter. Opbroek attended the

demonstrations in solidarity with demonstrators protesting against police violence and

demanding systemic change.

12.

On or around the evening of June 25, 2020, Opbroek attended a demonstration in downtown

Portland at the Multnomah County Justice Center. As she left the demonstration late that

evening, Opbroek heard of another demonstration occurring at PPB's North Precinct, which was

near her home. She decided to attend.

13.

Around approximately 1:10am in the early hours of June 26, 2020, Opbroek arrived at the area

around North Precinct on NE Martin Luther King, Jr. Boulevard and NE Emerson Street. There,

Opbroek encountered PPB officers in riot gear, lined up on NE Martin Luther King Jr. Boulevard.

14.

Within minutes of her arrival, PPB officers forcibly moved demonstrators north on NE Martin

Luther King Jr. Boulevard. Opbroek witnessed PPB officers firing flashbang grenades and other

impact munitions directly into the crowd of people. Opbroek witnessed PPB officers shoving

PAGE - 4   COMPLAINT



demonstrators to the pavement and curbs and witnessed PPB officers firing impact munitions

against people who were already on the ground or already moving north on the street. Prior to

these uses of force, Opbroek had not witnessed any demonstrators engaging in any threatening

behavior; rather, she had observed the demonstrators around her engaging in passive

resistance, refusing to leave, chanting, and yelling at the police officers.

15.

During this time, at least two PPB officers forcefully and repeatedly shoved Opbroek as she was

walking away from the police and in the direction the police told demonstrators to move.

16.

PPB officers then stopped forcefully moving members of the crowd and lined up across NE

Martin Luther King Jr. Boulevard. Opbroek stood with a crowd of demonstrators toward the front

of the crowd near NE Killingsworth Street, facing the police line, and filming with her cell phone.

PPB announced an "unlawful assembly" and ordered demonstrators to disperse, but Opbroek

and many people did not. Instead, Opbroek and demonstrators near her continued to stand

there, chanting and yelling at the police. Phrases chanted and yelled at the police officers

included: "Black Lives Matter," "ACAB, all cops are bastards," "who's streets, our streets," "quit

your jobs," "fuck you," "murders," "who do you protect, who do you serve," "bitches," and "fascist

pigs."

17.

Opbroek continued to chant and shout—including shouting that she lived here—while standing

a distance from the police line toward the front of the crowd with a few demonstrators in front of

her. PPB officers then launched at least one weapon at the demonstrators. The weapon landed

at the feet of demonstrators in front of Opbroek, producing smoke at their feet and legs. Those

demonstrators and Obproek started walking backwards away from the police and north on NE

Martin Luther King Jr. Blvd.

PAGE - 5   COMPLAINT



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

18.

Seconds later, Obproek turned away from the police in order to continue moving in the direction

the police had told the demonstrators to go. As Opbroek turned north and away from the police,

Defendants Officers John Does 1-2 fired at least one weapon at her. Defendant Officers John

Does 1-2 fired at least one weapon, believed to be a flashbang grenade, that exploded on or

near Opbroek, injuring her.



Figures 1 and 2: Images of Opbroek's leg injuries within minutes of Defendants' use
of force against her.

19.

The flashbang grenade and the exploding shrapnel burned Opbroek, gouged, or blew off

chunks of her flesh from her legs and caused additional physical injury to her head and chest.

She temporary lost her vision and hearing, was disoriented, felt her chest burning, and struggled

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

to move. As a result of Defendants' conduct, Opbroek suffered emotional distress, severe pain, physical wounds to multiple parts of her body, nerve damage, a concussion, and traumatic brain injury.

20.

At the time PPB subjected Opbroek to force and injured her, she had been retreating from the police and was not engaged in active aggression, nor did she pose a threat to officers or other demonstrators, and had been filming the police with her phone in hand

21.

As late as August 2018, PPB officers were trained or should have been trained to fire flashbang grenades or "aerial distraction devices" roughly twenty feet above a person's head, and not fire them directly at individuals.[1] As late as August 2018, PPB and Defendant City knew there to be a problem with PPB officers firing flashbang grenades directly at people and causing serious injuries, including in so-called "crowd control" situations.[2] On information and belief, PPB failed to properly provide so-called "crowd control" training to officers in 2020.

22.

Despite firing a flashbang grenade directly at Opbroek's body and causing obvious physical injuries, the individual Defendants failed to aid Opbroek or provide her assistance. Instead, other demonstrators who saw Opbroek called out, "she's bleeding" and "medic," and at least one protest medic attended to her wounds, which were freely bleeding. PPB continued to shoot flashbang grenades and so-called "less lethal" munitions indiscriminately into the crowd of demonstrators.

---

[1] Katie Shepherd, *Portland Police Suspend Use of "Flash-Bang" Grenades After Reports that Several Protesters Were Severely Injured by the Weapons,* WILLAMETTE WEEK (Aug. 6, 2018), available at https://www.wweek.com/news/courts/2018/08/06/ portland-police-suspend-use-of-flash-bang-grenades-after-reports-that-several-protesters-were-severely-injured-by-the-weapons/.
[2] *Id.*

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

23.

Opbroek then went to the Emergency Room where providers gave her pain medication and treated her for multiple wounds.

24.

On June 29, 2020, Opbroek received additional treatment to the wounds on her legs and chest. On or around that date, she was also diagnosed with a concussion as a result of the incident.



Figure 3: Images of injuries to Opbroek's chest, taken on approximately June 26, 2020.

25.

As a result of Defendants' conduct, Opbroek has had to seek continuous follow-up medical treatment on multiple occasions after the incident. Opbroek also has permanent scars on multiple places on her body.

26.

As a result of Defendants' use of force, Opbroek suffered mental and physical harms, severe pain, wounds, and a concussion, resulting in loss of income, the incursion of out-of-pocket expenses, and her inability to conduct daily life activities continuing to present.

PAGE - 8   COMPLAINT

**FIRST CLAIM FOR RELIEF**
**(Fourth Amendment Violation – Excessive Force – 42 USC § 1983**

**Count 1: Individual Liability Against All Individual Defendants)**

27.

Plaintiff realleges and incorporates by reference the above paragraphs.

28.

Plaintiff has a right to be free from unreasonable force as guaranteed by the Fourth Amendment to the United States Constitution.

29.

As alleged above, Defendants violated Plaintiff's rights to be free from undue and unreasonable force. Defendants' use of force was objectively unreasonable under the circumstances, unjustifiable, and constituted unlawful seizure and excessive force.

30.

At all material times, the law was clearly established that Defendants' use of force, in the manner and under the circumstances used against Plaintiff, who was nonviolent and attempting to comply, was objectively unreasonable, and any reasonable law enforcement officer would have known that the force used against Plaintiff was unreasonable and violated her clearly established Fourth Amendment rights.

31.

Defendants' conduct caused Plaintiff bodily harm and emotional distress in an amount to be determined at trial.

32.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 USC § 1988.

/ / /

/ / /

PAGE - 9   COMPLAINT



**Count 2: Municipal Liability Against Defendant City of Portland – Unlawful Practice or Policy Allowing Use of Force as a Crowd Dispersal Tactic**

33.

The City of Portland has an official policy of allowing the use of flashbang grenades against a crowd whenever it determines that the crowd is an "unlawful assembly" and/or "civil disturbance." This policy has no relationship with the *Graham v. Connor* Fourth Amendment standard regulating government use of force against individuals. The policy expressly allows for the indiscriminate use of force against a crowd of people, including those engaging in passive resistance, in violation of the Fourth Amendment.

Alternatively, even if the policy itself is constitutional, PPB's actual widespread practice and custom is to allow the use of flashbang grenades against a members of a crowd both before and after an "unlawful assembly" and/or a "civil disturbance" has been declared, even when a substantial number of people in that crowd, or even the majority of that crowd, are engaged only in the passive resistance to an order.

34.

On the date of the incident alleged, approximately June 25 into the early hours of June 26, 2020, PPB deployed flashbang grenades on demonstrators engaging in passive resistance and continued to deploy flashbang grenades on people moving away in retreat of the police, which is consistent with PPB officers' widespread custom of using flashbang grenades in a so-called "crowd control" context. The City has tacitly and explicitly authorized this use of force and knew or reasonably should have known that it would lead to the constitutional violations alleged herein. The City, acting pursuant to this policy, custom, or practice, unlawfully used this weapon against Plaintiff as alleged above.

/ / /

/ / /

PAGE - 10   COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

### Count 3: Municipal Liability Against Defendant City of Portland –
### Action of Policymaking Officials

35.

The decision to use flashbang grenades against Plaintiff was made by officials of the PPB who are sufficiently senior that the decision may fairly be said to represent official policy of the City of Portland. Former PPB Chief Jami Resch was, and PPB Chief Chuck Lovell is the highest level of authority within the PPB, and mayor of Portland Ted Wheeler, also the Police Commissioner, has acknowledged receiving minute-to-minute reports from PPB of events on the ground at protests. The decision to use riot control and "less lethal" weapons was made by official policy makers, the Chief of PPB and the mayor of Portland, who knew or reasonably should have known this would lead to constitutional violations alleged herein.

### Count 4: Municipal Liability Against Defendant City – Ratification

36.

Former PPB Chief Jamie Resch stated in a news conference on June 3, 2020 that the decision to use tear gas, other riot control, and "less lethal" weapons against a crowd of protesters the evening prior was made by incident commanders at the scene. As such, on information and belief, the decision to use flash bang grenades against the crowd containing Plaintiff was made by incident commanders on scene. As alleged above, these decisions were ratified by the Chief of PPB and the mayor of Portland who knew or reasonably should have known this would lead to constitutional violations alleged therein.

37.

The above-described conduct was the proximate cause of harm to Plaintiff.

/ / /

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

**SECOND CLAIM FOR RELIEF**
**(First Amendment Violation – Retaliation Against Speech – 42 USC § 1983**

**Count 1: Individual Liability Against All Individual Defendants)**

38.

Plaintiff realleges and incorporates by reference the above paragraphs.

39.

The First Amendment to the United States Constitution protects persons from unlawful

curtailment of expressive conduct, assembly, and association.

40.

Plaintiff was engaged in constitutionally protected acts of free speech, including public

demonstration opposing racism and police violence against Black people.

41.

By targeting and using force against Plaintiff, Defendants chilled her political speech and

violated her First Amendment rights.

42.

Defendant's retaliation directly and proximately caused Plaintiff bodily harm and emotional

distress in an amount to be determined at trial.

43.

Plaintiff is entitled to reasonable attorney fees pursuant to 42 USC § 1988.

**Count 2: Municipal Liability Against Defendant City of Portland –**
**Unlawful Policy or Practice**

44.

Plaintiff realleges and incorporates by reference the above paragraphs.

45.

The City of Portland has a custom and practice of using indiscriminate and militarized force

against demonstrators critical of the police, as demonstrated by the use of indiscriminate and



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

so-called "less lethal" weapons against those protesting outside of PPB's police precinct in North Portland. Defendants' use of force was intended to punish a group of protesters *en masse* for their political speech, and to deter similar expressions of speech. The decision to fire flashbang grenades into a crowd of protesters and directly at a person's body outside of PPB's North Precinct was made in retaliation for the demonstrators' protected speech condemning the police at a symbolic location of the protest subject matter and to chill the expression of further similar speech.

46.

The supervisors within Defendant City who authorized, made, and ratified the decision to attack and the demonstrators critical of the police are sufficiently senior so that their decision can fairly be said to be the official policy of the City of Portland, and they knew or reasonably should have known this would lead to the constitutional violations alleged herein.

47.

The above-described conduct was a proximate cause of harm to Plaintiff.

**THIRD CLAIM FOR RELIEF**
**(Battery – State Tort – Against Defendant City of Portland)**

48.

Plaintiff realleges and incorporates by reference the above paragraphs.

49.

Employees and agents of the Defendant City of Portland did unlawfully intend to cause harmful physical contact with Plaintiff and did cause harmful physical contact by the individual Defendants' intentional act of firing flashbang grenades at Plaintiff. Such actions were unreasonable and excessive under the circumstances and were not otherwise privileged or justified.

/ / /

PAGE - 13   COMPLAINT



50.

Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Assault – State Tort – Against Defendant City of Portland)

51.

Plaintiff realleges and incorporates by reference the above paragraphs.

52.

Employees and agents of the Defendant City of Portland intentionally attempted to cause harmful physical contact with Plaintiff by aiming and firing flashbang grenades at Plaintiff, while having the present ability and opportunity to carry out the assaults, as alleged above. Such actions were unreasonable and excessive under the circumstances and were not otherwise privileged or justified.

53.

Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

54.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorney fees.

### FIFTH CLAIM FOR RELIEF
### (Negligence – State Tort – Against Defendant City of Portland)

55.

Plaintiff realleges and incorporates by reference the above paragraphs.

56.

The above-described actions of the Individual Defendants created a duty of care to Plaintiff. The above-described actions of the Defendants breached that duty of care.

PAGE - 14   COMPLAINT

57.

Defendants' above-described individual or cumulative acts were unreasonable and excessively dangerous in light of the risk to Plaintiff and in light of the purported purposes of the acts.

58.

In performing the above-described individual and cumulative acts, Defendant City's officers directly and proximately caused Plaintiff physical and/or mental harm while infringing on Plaintiff's rights to be free from unlawful violence and to attend and engage in constitutionally protected free-speech activity without threat of retaliation.

59.

The City's inadequate training, supervision, review, or discipline of PPB officers has created a culture and pattern within PPB of officers using excessive force against crowds of demonstrators who support Black Lives Matter or are critical of the police. Additionally, by firing their weapons directly at Plaintiff and directly into a crowd of people engaging in passive resistance, agents of the City created an unreasonable risk of harm against Plaintiff and all those present.

60.

Plaintiff's physical and mental harms and injuries were within the general type of potential incidents and injuries that made Defendant's conduct negligent. That is, the acts of Defendant City's officers in using indiscriminate and "less lethal" weapons for "crowd control" and collective punishment, as described above, against Black Lives Matters demonstrators or demonstrators critical of the police and/or persons engaged in passive resistance created a foreseeable and unreasonable risk of physical and mental harm that reasonably would likely result in infringements of Plaintiff's rights to be free from unreasonable force by the government and Plaintiff's right to attend and engage in constitutionally-protected free-speech activity without threat of chill or retaliation.

PAGE - 15   COMPLAINT



61.

Defendant City is vicariously and directly liable to Plaintiff for the conduct of the individual

Defendants and law enforcement agents alleged herein.

62.

In performing the above-described acts, Defendants directly and proximately caused Plaintiff to

suffer physical and mental harms and economic and non-economic damages. Defendant's

intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional

distress in an amount to be determined at trial.

63.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorney fees.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for

the following in accordance with the proof at trial:

1.    Economic damages,

2.    Non-Economic damages,

3.    Attorney's fees,

2.    Prejudgment and post judgement interest as appropriate and allowed by law,

3.    On all claims, as applicable, amounts necessary to offset the income tax

consequences of receiving a lump sum payment, rather than receiving payment of

wages over the applicable time frame; and

4.    Any other relief the court deems proper.

**DATED** this 25th day of April 2022.

s/ *Maya Rinta*
**Maya Rinta,** OSB No. 195058
**J. Ashlee Albies,** OSB No. 051846
**Viktoria Lo,** OSB No. 175487
*Attorneys for Plaintiff*

PAGE - 16   COMPLAINT

