**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Viktoria Lo**, OSB No. 175487
Email: viktoria@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR, 97205
Telephone: (971) 229-1241

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **MEGHAN OPBROEK**, <br><br> Plaintiff, <br><br> vs. <br><br> **CITY OF PORTLAND**, a municipal corporation, <br> **ZACHARY DOMKA**, in his individual capacity, <br> **BRENT TAYLOR**, in his individual capacity, <br> **MARK DUARTE**, in his individual capacity, and <br> **ERIK KAMMERER**, in his individual capacity, <br><br> Defendants. | Case No. 3:22-cv-00610-JR <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS** <br><br> **ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF
PORTLAND'S MOTION TO DISMISS - i

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

# INTRODUCTION

This is a civil rights case brought against the City of Portland and its police officers for firing at least one flashbang grenade at Plaintiff while she turned and was walking away from the officers. The City has a long history of injuring people with these dangerous weapons, contrary to officer training, and while under a Temporary Restraining Order ("TRO") limiting use of force during protests issued by the federal court days earlier.

Now the City seeks to dismiss all of Plaintiff's state law claims based on its interpretation that ORS 30.265(6)(e) provides unqualified immunity to Defendants for any and all city employee conduct, no matter how egregious or shocking, because the conduct occurred during or in prevention of a "riot, civil commotion, or mob action." The City fails to acknowledge these terms are undefined in the statute and admits its interpretation of ORS 30.265(6)(e) disregards the constitutionality of the officers' conduct. Even though no state court has adopted the City's extreme interpretation of this law, and its interpretation contradicts legislative history, the City argues for an interpretation that would deprive *all* people of *all* remedies under state law in this context. As such, and for the reasons herein, this Court should deny Defendant City of Portland's Partial Motion to Dismiss in its entirety.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      STATEMENT OF RELEVANT FACTS

### A.  Flashbang Grenades are Known Dangerous Weapons

Flashbang grenades are a use of force that must comply with constitutional standards. *See Boyd v. Benton County,* 374 F.3d 773 (9th Cir. 2004). A 2015 investigation by ProPublica found that flashbang grenades are used by law enforcement with little oversight or documentation, and

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

that these weapons can cause serious burns, injuries, maiming, and even death.[1] Physicians for

Human Rights and the International Network of Civil Liberties Organizations have stated that,

due to their dangerousness, flashbangs "have no place in effective crowd management[.]"[2]

### B. Portland Police Have a History of Injuring Non-Violent Demonstrators with Flashbang Grenades

Portland Police Bureau ("PPB") officers have a history of using flashbang grenades

against demonstrators, including those who pose no threat and those who are retreating from the

police. For example, in 2014, Portland artist and racial justice organizer Glenn Waco reported

that PPB targeted him and fired flashbang grenades directly at his feet. In 2017, viral video

footage showed a PPB officer throwing a flashbang grenade directly at a documentary filmmaker

who was merely filming an arrest of a demonstrator from a distance.[3]

In 2018, PPB on two separate occasions launched flashbang grenades directly at

demonstrators protesting against white supremacy and Patriot Prayer, including on one occasion

hitting a demonstrator in her chest and arm,[4] and on another hitting a demonstrator in the back of

his head.[5] In the first incident, the demonstrator alleged PPB "shot flashbang munitions directly

into the crowd of protesters" and not "overhead," and that the flashbang caused third-degree

burns, major impact wounds, and major soft-tissue damage.[6] In the other incident, the

---

[1] Julia Angwin & Abbie Nehring, *Hotter Than Lava*, PROPUBLICA (Jan. 12, 2015) available at https://www.propublica.org/article/flashbangs.

[2] Rohini J. Haar, et al, *Lethal in Disguise: The Health Consequences of Crowd-Control Weapons* 68 (2016) available at https://www.aclu.org/report/lethal-disguise-health-consequences-crowd-control-weapons.

[3] Conrad Wilson, *Portland Officer Use of Distraction Grenade During Protest Under Review*, OPB, (Sept. 13, 2017) available at https://www.opb.org/news/article/portland-grenade-flash-bang-protest-film-maker-investigation/.

[4] *Fawcett v. City of Portland,* Multnomah County Circuit Court Case No. 19CV34160.

[5] *Cantu et. al. v. City of Portland et. al.*, U.S. District Court Case No. 3:19-cv-1606.

[6] *Supra,* FN 6 (Complaint, ¶¶ 1, 12, 13, 14, 15).

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

demonstrator alleged that PPB fired flashbang grenades and struck him in the back of his head while he was running away.[7]

### C. In 2018, PPB Suspended Use of Flashbang Grenades Due to Serious Injuries to Demonstrators

Due to the severe injuries PPB caused to demonstrators described above, in August 2018, then-Portland Police Bureau Chief Danielle Outlaw announced that PPB was suspending use of flashbang grenades and evaluating their use.[8] At a press conference announcing the decision, PPB Assistant Chief Ryan Lee represented that PPB officers are "trained to fire those [weapons] not directly at individuals. They're trained to fire them over the crowd" and that the grenades therefore "should actuate roughly 20 feet above that person's head."[9] PPB's training to officers includes that "their RBDD devices have a 50-foot blast radius over a 360-degree range" and "also instructs never to throw within 5-6 feet of a person and the training illustrates grievous injuries from misfired grenades." *United States of America v. City of Portland,* U.S. District Court Case No. 3:12-cv-02265-SI, ECF 292-1, p.9 (United States Department of Justice's Sixth Periodic Compliance Assessment Report, submitted June 30, 2022).[10]

### D. During Mass Demonstrations in 2020, PPB Continued to Fire Flashbang Grenades Directly at Demonstrators

On May 29, 2020, people in Portland along with those across this nation and the globe joined demonstrations following the police killing of George Floyd, protesting against police

---

[7] *Supra,* FN 7 (Complaint, ECF 52, ¶¶ 24, 25, 26).
[8] Katie Shepherd, *Portland Police Suspend Use of 'Flash-Bang' Grenades After Reports that Several Protesters Were Severely Injured by the Weapons*, Willamette Week (Aug. 6, 2018) available at https://www.wweek.com/news/courts/2018/08/06/portland-police-suspend-use-of-flash-bang-grenades-after-reports-that-several-protesters-were-severely-injured-by-the-weapons/.
[9] *Id.*
[10] Also attached as Exhibit 1 to the Declaration of Maya Rinta in Support of Plaintiff's Response to Defendant City's Partial Motion to Dismiss ("Rinta Decl."), and hereafter referred to as "US DOJ Rep." Page numbers citations are to those of the original document's page numbers.

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF
PORTLAND'S MOTION TO DISMISS -3

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

violence and white supremacy, and in support of Black Lives Matter and racial justice. PPB responded with violence, using force against non-violent demonstrators including people who were in retreat or otherwise walking or running away from the police. *See, e.g., Don't Shoot Portland et. al. v. City of Portland,* U.S. District Court Case No. 3:20-cv-00917 ("*Don't Shoot Portland*"), ECF 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 (declarations in support of Plaintiffs' Motion for a Temporary Restraining Order setting forth examples of PPB's uses of force).

PPB officers self-reported using force over 6,600 in response to the 2020 protests. US DOJ Rep., p. 58. Numerous incidents of PPB firing flashbang grenades directly at non-violent demonstrators during this period are well-documented in the *Don't Shoot Portland* case. *See* Rinta Decl., ¶ 4 (a)-(j) (citing specific examples from demonstrators' declarations).  PPB officers' own Force Data Collection Reports ("FDCR") also showed PPB officers—including Defendant officers—reportedly firing flashbang grenades with the express goal "to motivate the crowd to move," "to encourage people to leave the area," and "in order to disperse them [a crowd of individuals (100+)]." *Id.*, ECF 255, Exs. 28, pp. 46, 47 , pp. 63 ; 30, p.2; 33, 46, p.3.

PPB's violent conduct prompted Chief Federal Judge Marco A. Hernández to grant a Temporary Restraining Order against the City of Portland on June 9, 2020. *Don't Shoot Portland v. City of Portland,* 465 F. Supp. 3d 1150 (D. Or. 2020). PBB's continued conduct against demonstrators violating that Temporary Restraining Order resulted in Judge Hernández finding the City of Portland in contempt on November 27, 2020. *Don't Shoot Portland v. City of Portland,* 503 F. Supp. 3d 1022 (D. Or. 2020).

### E.  On June 25, 2020, Portland Police Fired At Least One Flashbang Grenade at Plaintiff, Directly Hitting Her and Injuring Her

On June 26, 2020, Plaintiff Meghan Opbroek attended a demonstration near PPB's North Precinct on NE Martin Luther King, Jr. Blvd. Declaration of Meghan Opbroek in Support of

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Plaintiff's Response to Defendant City's Partial Motion to Dismiss ("Opbroek Decl."), ¶¶ 2, 3. Opbroek was immediately confronted with PPB officers outfitted in armor and weapons. *Id.* at ¶ 4. The officers engaged in multiple uses of force with the sole purpose of attempting to disperse demonstrators, including shoving, pushing, and firing flashbang grenades and other munitions at non-violent demonstrators. *Id.* at ¶¶ 5, 6. As Opbroek was turned away and walking away from officers, Defendants deployed at least one flashbang grenade which exploded on or near her, causing her serious injuries include burns, gouging out her flesh, and a traumatic brain injury. *Id. at* ¶¶ 1, 12, 13, 14. Opbroek was treated by a protest medic and then left the area to go the Emergency Room. *Id.* at ¶¶ 14, 15. Opbroek was at the demonstration for approximately 40 minutes total before Defendants gravely injured her. *Id.* at ¶¶ 2, 16. At no point did Opbroek engage in any violence, attempted violence, or property destruction and at no point did she pose a threat to anyone. I*d. at* ¶¶ 18, 19.

## F. The City of Portland Failed or Refused to: Provide Adequate Training to PPB Officers, Adequately Investigate Officer Conduct, or Discipline Officers

In its periodic review of PPB's compliance with its Use of Force policy pursuant to the Settlement Agreement between the parties, the U.S. Department of Justice ("US DOJ") noted four areas of "particular concern," two of which included (1) PPB's own reports reviewing officers' use of force validated out-of-policy conduct from the 2020 protests and (2) PPB's administrative investigations excused out-of-policy conduct of Rapid Response Team ("RRT") officers "because they trained themselves incorrectly." US DOJ Rep., p. 3. Specific examples of concern with officer training included: "training materials which incorrectly portrayed the legal justification for force" and which encouraged violence against left-wing protesters. *Id.* at p. 26. The US DOJ also found that "the City did not remedy the poor training to RRT and its overall effect on the organization." *Id.* at p. 27. Judge Hernández also restricted PPB officers from using

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

launchers until they received further training, including so that officers could "recognize and articulate a threat without speculating and before utilizing less-lethal force." *Don't Shoot Portland*, at *3 (D. Or. Mar. 16, 2021).

The US DOJ also found that the City of Portland had a "fundamental issue of accountability" when it came to PPB officers, finding that "the City failed to identify misconduct in several cases [of use of force during the 2020 protests] and did not hold any supervisors responsible for their conduct." *Id.* at p. 58.

It is in this context that the City now seeks unqualified immunity from accountability.

## II.    LEGAL STANDARDS AND ARGUMENT

The City's proposed interpretation is a radical proposition that invents an exception that swallows the rule effectively rendering the Oregon Tort Claims Act ("OTCA") and the Oregon Constitution's Bill of Rights meaningless. The City asks this Court to grant blanket immunity to any police officer for any tortious conduct committed in the context of an *undefined* "riot or civil commotion." Moreover, its argument that "ORS 30.265(6)(e) also provides immunity for any conduct 'in connection with' the prevention of a riot or civil commotion," Def's Mtn, p. 12, seeks to eliminate a whole class of claims, including intentional and constitutional torts, leaving all people physically injured by the city in the particularly troublesome context of state-controlled political speech, without any remedy at all under Oregon law.

The City cites no Oregon state court authority for its novel application of this statute to grant it blanket immunity from all state law claims in the context of a civil demonstration. On the contrary, several Oregon District courts have recently denied the City's motion for summary judgment and motion to dismiss stages based on this same argument. *McCrae v. City of Salem*, No. 6:20-CV-01489-MC, 2022 WL 833213, at *7 (D. Or. Mar. 21, 2022); *Cox v. City of*

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

*Portland,* No. 3:21-CV-00984-HZ, 2022 WL 16552077, at *1 (D. Or. Oct. 26, 2022).[11] Both

courts repeatedly cautioned that "[t]here is little caselaw interpreting this provision, including

what constitutes a 'riot, civil commotion or mob action.'" *McCrae,* at *7 (D. Or. Mar. 21, 2022);

*Cox,* at *8, 10-11 (D. Or. Oct. 26, 2022). Defendant's proposed interpretation for ORS

30.265(6)(e) is frightening, unconstitutional and directly contradicts legislative intent. It should

be unequivocally rejected.

### A. The City as a Municipality Does Not Enjoy State Sovereign Immunity

The City relies on out of circuit *state* sovereign immunity cases under the Eleventh

Amendment for its flawed premise that the OTCA is "a limited waiver" of *the municipality's*

broad sovereign immunity. Def's Mtn, p. 8. But, unlike states, "[c]ities in Oregon never have

enjoyed a complete immunity equal to the state's sovereign immunity." *Comcast of Ore. II, Inc.*

*v. City of Eugene*, 346 Or. 238, 246 (2009). These cases are thus irrelevant to the issue at hand.[12]

"At common law, prior to the enactment of the OTCA in 1968, police officers were not

immune from liability for tortious conduct committed within the scope of employment. . . So far

as we can tell from the history of this state, police officers have never enjoyed such an

immunity." *Rogers v. Saylor*, 306 Or. 267, 274 (1988); *see e.g., Nelson v. Lane County*, 304 Ore.

97, 107, 743 P.2d 692 (1987) ("an unauthorized intentional intrusion upon one's person,

---

[11] The court in *Cox* denied defendant's motion to dismiss based on the record not being fully developed. The Ninth Circuit, unlike the Fifth Circuit cases cited by Defendant, has also held that sovereign immunity questions are to be raised as an affirmative defense, not on a 12(b)(1) motion to dismiss. *Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006).

[12] The City also wrongly asserts that, because waiver of sovereign immunity "may not be implied" and "must be stated by unambiguous legislative action," the OTCA "specifically retains immunity" for PPB officers engaged in any conduct in a riot context. Def's Mtn, pp. 8, 9. The Oregon Supreme Court has rejected this argument, including for the exceptions set forth in ORS 30.265(6), finding "that clear expression of waiver in the OTCA itself." *Sherman v. State by & through Dep't of Hum. Servs.*, 368 Or. 403 (2021).

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

property, or effects is a trespass. The tort traditionally has encompassed a damage action against police officers for exceeding their authority to search and seize."). The OTCA codifies the longstanding common law liability of police officers by creating the ***sole remedy*** of suing the city for the torts committed by its employee police officers within the scope of their employment. Or. Rev. Stat. § 30.265 (1-2).

     **B.** **Defendant's Proposed Interpretation of ORS 30.265(6)(e) Is Unconstitutional Under Oregon Constitution Article I, Sections 8, 9 and 10.**

By interpreting ORS 30.265(6)(e) to immunize both the City and its officers for liability arising from officers' own torts in the context of an undefined "riot or civil commotion," or "any steps taken to prevent such commotion," the City argues for an unconstitutional interpretation of the statute. In fact, the City plainly admits that were the Court to adopt its interpretation, this would mean that ***no court***—"neither state nor federal court[]"—has jurisdiction to provide remedies for Plaintiff's state law claims. Def's Mtn, p. 8.

"[T]he remedy clause [of Article I, section 10] provides that every man shall have remedy by due course of law for injury done him in his person, property, or reputation." *See,* Or. Const. art I, § 10; *Horton v. Or. Health & Sci. Univ.*, 359 Or. 168, 171 (2016). The Oregon Supreme Court has interpreted this clause to mean that a legislature may not entirely deprive a person of remedies for common law rights of action including "by immunizing both the city and its employees." *Horton*, 359 Or. at 189-90.

Were the Court to adopt the City's statutory interpretation, no remedies would exist for someone who was unconstitutionally seized or unreasonably assaulted by a police officer, even where the officer acted contrary to law, as well as his policies and training, and where plaintiff was not participating in the alleged "civil commotion" or "riot," as is the case here. *See supra,* Section I. Because plaintiffs cannot sue to enforce their rights under the Oregon Constitution

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

directly, *Hunter v. Eugene*, 309 Or. 298, 303, 787 P.2d 881, 883 (1990), they must sue under "existing common-law, equitable, and statutory remedies" for constitutional violations. This means that the *sole remedy* for state constitutional violations by public bodies, officers, employees, and agents is provided by the OTCA—which the City now argues should provide no remedy at all. Or. Rev. Stat. § 30.265 (2) ("The remedy provided by ORS 30.260 to 30.300 is ***exclusive of any other action*** or suit against any such officer, employee or agent of a public body whose act or omission within the scope of their employment or duties gives rise to the action or suit. ***No other form of civil action or suit shall be permitted***.") (emphasis added).

If ORS 30.265(6)(e) removes the people's right to a remedy for public officials acting in violation of the people's constitutional rights, it is also unconstitutionally overbroad. The City admits that its claim of immunity reaches unconstitutional conduct by officers. Def's Mtn, p. 12. If ORS 30.265(6)(e) completely immunizes public officials from any plaintiff enforcing their constitutional rights to freedom of speech and assembly under Article I, Section 8 and freedom from unreasonable searches and seizures under Article I, Section 9 of the Oregon Constitution, this law is an impermissibly overbroad infringement of the people's constitutional rights. *See e.g. State v. Blocker*, 291 Or. 255, 261 (1981). The City's interpretation is an unconstitutionally overbroad reading of the law, infringing on the people's rights under Articles I, Sections 8, 9, and 10 of the Oregon Constitution. *See,* Or Const. art I, § 8; Or. Const. art I, § 9; Or. Const. art I, § 10. The Court should apply the statutory construction canon of constitutional avoidance and interpret ORS 30.265(6)(e) "in such a manner as to avoid any serious constitutional problems." *State v. Straughan*, 263 Ore. App. 225, 234 (2014) (internal quotation marks omitted).

/ / /

/ / /

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**C. ORS 30.265(6)(e) Does Not Provide Immunity to Police Officers for Any Conduct During a Demonstration**

**1. Defendant's proposed interpretation of ORS 30.265(6)(e) directly contradicts legislative intent.**

Defendant's proposed interpretation of ORS 30.265(6)(e) contradicts legislative intent. The legislative history makes clear that the Oregon Legislature intended the law to protect municipalities from liability for damages to private property *caused by* rioters and did not intend to create blanket immunity for any public body's or officers' torts and constitutional violations.

A party has a statutory right to offer the Court legislative history to interpret a statute, even in the absence of ambiguity in the text. *State v. Gaines*, 346 Or. 160 171-72 (2009); ORS 174.020. Courts are to "consider the legislative history that the parties have proffered, along with any pertinent legislative history that [they] independently have examined." *Gaines* at 177–78. Legislative history can be used by a party to show the court that "superficially clear language is actually not so plain at all." *Id*. at 172. Additionally, Oregon courts "routinely" rely on testimony of non-legislator witnesses as reliable legislative history, which is appropriate when there is reason to believe the legislature relied on the representations of the nonlegislator witness. Hon. Jack L. Landau, *Oregon Statutory Construction*, 97 Or. L. Rev. 583, 701-02 (2019).

The original version of the OTCA, enacted in 1967, did not contain a provision addressing municipal immunity for acts committed by officers during a riot or civil commotion. The League of Oregon Cities, Association of Oregon Counties, and the Oregon School Board Association requested to add the language in 1969, which was proposed as House Bill 1515. Declaration of Viktoria Lo in Support of Plaintiff's Response to Defendant City of Portland's Partial Motion to Dismiss (hereinafter "Lo Decl.") Exhibit 1-Oregon House Judiciary Committee Minutes for HB 1515 (1969) at 3, 4. The principal drafter of the bill was Joseph T. Henke,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Research Attorney at the Bureau of Government Research and Service at the University of Oregon. Henke was present during the bill's introduction and discussion, wrote commentary for each section of the proposed bill, and submitted his commentary as exhibits to the House Judiciary Committee. Lo Decl. Exhibit 1, at 1-3, 18, 20 ("He stated that the existing law needed more definition and clarification and that the proposed changes are basically mechanical…") (emphasis added). The committee minutes further illuminate that the intent of the drafters, commentators, and legislators of HB 1515 was to clarify the law in order to make it easier for public bodies to get *liability insurance* by making the liability of public bodies more clearly defined and predictable. Lo Decl. Exhibit 1, at 3, 4, 11, 15-16, 17, 23-25.

The legislative history of the provision addressing immunity for riot and civil commotion specifically shows that it was ***not intended*** to provide immunity to public employees for the torts they committed during civil disturbances. The bill's drafter wrote regarding this provision:

> This section is added to preserve immunity from claims arising out of civil disturbances. Preservation of immunity in this instance is common in other states. **It does not bar claims for torts committed by public employees [sic] during the course of civil disturbances but would preclude claims based on a theory that a public body caused or failed to prevent a civil disturbance**. *Liability insurance policies commonly exclude coverage of this risk.*

Lo Decl. Exhibit 1, at 11 (emphasis added). At the time Henke wrote this commentary, his proposed draft read:

> Neither a public body nor its officers, employes [sic] and agents acting within the scope of their employment or duties are liable for injury or damage because of…(6) The occurrence or failure to prevent riot, unlawful assembly, public demonstration, mob violence or other civil disturbance.

Lo Decl. Exhibit 2- Proposed Language of HB 1515 (1969), at 10. The final language of the provision enacted in 1969 was slightly different:

> "(3) Neither a public body nor its officers, employes [sic] and agents acting within the scope of their employment or duties are

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

liable for injury or damage: (a) Arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing."

Lo Decl. Exhibit 2, at 1. The change of phrasing to "*arising out of* riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing" more closely mirrors the sentiment Henke expressed in his commentary because it adopts the passive language of "arising under" in relation to claims against public bodies for property damage caused by "rioters," which the city failed to prevent but did not directly cause. The 1977 amendment merely renumbered this provision as ORS 30.265(3)(e) and reworded the introductory clause, but did not change the operative language of the Defendant's claimed immunity clause:

> "(3) Every public body and its officers, employes [sic] and agents acting within the scope of their employment or duties are immune from liability for: . . . (e) Any claim arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing."

*Former* Or. Rev. Stat. §30.265 (3)(e) (1977). The final change to the provision occurred in 2011, when the provision was again renumbered, and a phrase about vehicle drivers was added to the introductory clause, again without changing the operative language of the Defendant's claimed immunity clause. The current provision, ORS 30.265(6)(e), reads:

> "(6) Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598, are immune from liability for: . . . (e) Any claim arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing."

None of these changes altered the meaning of the statutory provision or contradicted the original legislative intent in any way.

The historical context at the time this statute was drafted and enacted is also illustrative.

The first version of now-ORS 30.265(6)(e) was enacted in 1969 on the heels of mass protests,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

demonstrations, and riots in response to the U.S.'s involvement in the Vietnam War, police brutality, and racial injustice. Around that time, municipalities across the country were grappling with the question of if and how to legislate municipal liability for property damage caused by these "large-scale civil disturbances" happening across the country. *See, e.g.,* Lo Decl. Exhibit 4- *Municipal Liability for Riot Damage*, 81 Harv. L. Rev. 3, 653-656 (Jan. 1968); Lo Decl. Exhibit 3- *Municipal Liability For Riot Damage Under Eminent Domain*, 28 Wash. & Lee L. Rev. 103 (1971). Oregon was not alone in enacting statutes addressing liability for damages caused by demonstrators. During this time, many other states enacted similar statutes to address municipal liability for riot damages, dealing with municipal action or inaction to prevent the riot and related damages from or the concurrent negligence of property owners—but ***not*** in response to or contemplation of injuries caused by police officers. *Id*.

The legislative history clearly shows that ORS 30.265(6)(e), the current iteration of this statute, was not intended to protect *all officer uses of force* in response to a "riot or civil commotion." The City's interpretation is not only unsupported by this legislative history, but also directly contradicted by it.

2.  **"Riot," "Civil Commotion," and "Mob Action" are Undefined in the OTCA, and the City's Proposed Definition is Unsupported**

The City claims "[t]here can be no doubt [. . .] that ORS 30.265(6)(e) applies to this case." Def's Mtn., p. 10. To the contrary, Federal District Courts have found municipalities' "reliance on ORS 30.265(6)(e) unavailing," noting also "[t]here is little caselaw interpreting this provision, including what constitutes a 'riot, civil commotion, or mob action.'" *McCrae*, at *7 (D. Or. Mar. 21, 2022) (declining to grant summary judgment to City of Salem based on ORS 30.265(6)(e)). *See also Cox*, at *1 (D. Or. Oct. 26, 2022) (denying defendant's Partial Motion to

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF
PORTLAND'S MOTION TO DISMISS -13

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Dismiss based on assertion of immunity under ORS 30.265(6)(e)). Even though neither court was presented with the legislative history of ORS 30.265(6)(e) they still ruled against the City.

Because the OTCA does not define the key terms "riot," "civil commotion," or "mob action." in ORS 30.265(6)(5), the City borrows from sources well outside the OTCA including unrelated Oregon statutes, other states' criminal codes, and First Amendment jurisprudence to cobble together its argument: that officers are permitted to engage in and enjoy immunity for any and all uses of force—presumably up to and including deadly force—against anyone as long the act of force occurs during or is taken "in prevention of" an undefined "riot." The City's proposed interpretation is wrong, and its own cited authorities do not support it. Plaintiff takes each in turn.

The City first cites ORS 131.675 to argue law enforcement is authorized to disperse a group of people unlawfully or riotously assembled in any county. Def's Mtn, p. 9. To be clear, the OTCA does not incorporate or reference ORS 131.675. Nor does ORS 131.675 authorize any uses of force; rather, it plainly requires "arrest," followed by due process. This unrelated statute also provides no definitions for "unlawfully or riotously assembled."

The City then cites *Wise v. City of Portland* to argue that "some level of reasonable force" is authorized to effect dispersal of a crowd. 483 F. Supp. 3d 956, 989 (D. Or. 2020); Def's Mtn, p. 9. The *Wise* Court does not mention or discuss ORS 30.265(6)(e) and does not interpret "riot" or the OTCA; the language cited here was used specifically in the context of considering a First Amendment retaliation claim on a Temporary Restraining Order. *Id.* Plaintiff brought this action to challenge the very *reasonableness* of the City's actions under state law; the City's claim of immunity wholly deprives both state and federal court and the jury of their ability to determine the issue.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

The City also cites *City of Portland v. Hemstreet* to ostensibly support its definition that a gathering of five or more people is unlawful when "the conduct of persons within the group presents a 'clear and present danger[.]'" 119 Or. App. 239, 242 (1993) (quoting *Cantwell v. State of Connecticut*, 310 U.S. 296, 309 (1940); Def's Mtn, p. 9. *Hemstreet,* too, does not define "unlawful" gatherings, does not make mention of "five or more people," and does not define a "riot," "civil commotion," or "mob action." *Id. Hemstreet* was a direct appeal of a criminal conviction, challenging city code authorizing arrest following a failure to disperse. *Hemstreet* does not support Defendant's assertion of absolute immunity to use any level of extrajudicial force against anyone following its own declaration that a gathering is a "riot."

The City's citations to *Feiner v. New York* and *Washington Mobilization Committee* also omit or misconstrue the courts' crucial constitutional balancing test of individual rights against the state's interest in maintaining order. Def's Mtn., p. 9. In the omitted sentence after the City's quotation from *Feiner*, the Court employs the balancing test:

> This Court respects, as it must, the interest of the community in maintaining peace and order on its streets. We cannot say that the preservation of that interest here encroaches on the constitutional rights of this petitioner.

*Feiner v. New York,* 340 U.S. 315, 320 (1951). Despite this, the City goes on to argue that police "intervention" (which in this case means firing at least one flashbang grenade at Plaintiff) is legally permitted and dependent on "the tenor of the demonstration as a whole" where police "may act to control it as a unit." Def's Mtn, p. 9 (citing *Washington Mobilization Committee v. Culliname,* 566 F.2d 107, 120 (D.C. Cir 1977). Its quotation is another misstatement of the law; the court emphasized in the following sentence, "We do not suggest of course that one who has violated no law may be arrested for the offenses of those who have been violent or obstructive." *Washington Mobilization Committee,* 566 F.2d. at 120. Similar to the other cases the City

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

mistakenly relies on, *Washington Mobilization* was about arrests of demonstrators—not uses of

force against demonstrators—and certainly does not support the City's assertion that police have

legal authority to use force against non-violent protesters like Plaintiff simply because someone

else at some point in the protest may have engaged in violent or obstructive behavior.

Last, the City cites language from *Menotti v. Seattle* that "the unlawful actions of a few

impair the ability of others to exercise their rights[.]" Def's Mtn, p. 10; 409 F.3d 1113, 1115 (9th

Cir. 2005). But the *Menotti* Court recognized the importance of "the proper balance between, on

the one hand, the vibrant rights of free speech and assembly in an open society and, on the other

hand, the needs of a city to maintain order and security." *Id.* at 1117. The City seeks to deprive

this court and state courts of their power to determine, as they must, if city officials "act[ed]

reasonably, within the bounds of the Constitution." *Id.* at 1155–56 (9th Cir. 2005)

Contrary to the City's argument, the Ninth Circuit has made clear that conduct of other

individuals in a crowd does not justify use of force against all members of the crowd *en masse:*

> The officers' general interest in clearing the complex does not provide a legitimate
> governmental interest sufficient to justify the use of the force at issue. While it is
> undisputed that there were individuals hurling both bottles and expletives at officers, it is
> also undisputed that Nelson and his companions were not among them, and the
> individuals causing the problems were not so numerous that the two categories of
> partygoers were indistinguishable. The application of force to Nelson's group therefore
> could not have been justified by the government's interest in stopping any and all
> disorderly behavior.

*Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012).

### 3.   The City's Reliance on *Albers* and *Hicks* is Misplaced

The City cites two distinguishable cases to support its proposed interpretation of ORS

30.265(6)(e): *Albers v. Whitley*, 743 F.2d 1372, 1377 (9th Cir. 1984); and *Hicks v. City of

Portland*, No. CV 04–825–AS, 2006 WL 3311552 (D. Or. Sept. 13, 2006), *report and

recommendation adopted*, No. CV 04–825–AS, 2006 WL 3311552 (D. Or. Nov. 8, 2006). As

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

determined by Judge Hernández considering the same issue, these cases "are distinguishable and of limited assistance in deciding [defendant's] Motion to Dismiss" primarily due to the fact that those decisions were reached at the end of a jury trial on directed verdict and on a full record developed summary judgment. *Cox*, at *4 (D. Or. Oct. 26, 2022).

Moreover, *Albers* involved a very different context of officer use of force during a prison riot and did not appropriately interpret ORS 30.265(6)(e). After focusing the majority of its analysis on the federal constitutional claims, the district court in *Albers* cited no authority for its novel interpretation of ORS 30.265(6)(e). *Albers v. Whitley*, 546 F. Supp. 726, 738 (D. Or. 1982). There is no indication that the *Albers* court considered the legislative history of ORS 30.265(6)(e), as it must do under current Oregon law. In reviewing the district court's decision, the Ninth Circuit affirmed the district court's dismissal of the state law claims on account of riot immunity under ORS 30.265(6)(e), *without any analysis*, focusing the majority of its opinion, as the district court did, on the federal claims. *Albers,* 743 F2d., at 1377 (single sentence on state claims stating, "The district court correctly dismissed Albers' pendent state tort claims because recovery is barred by the Oregon Tort Claims Act. See O.R.S. § 30.265(3)(a).") Again, because the *Albers* court was not presented with the legislative history of ORS 30.265(6)(e), its decision rests on infirm grounds and should not be adopted by this Court.

### D.  In the Alternative, the City's Motion Should be Denied Because It Fails under Both the Facial and Factual Standards for a Jurisdictional Challenge.

In the alternative, the City's Motion should be denied because it fails under both  "facial attack" and "factual attack" standards for challenging jurisdiction, and the record is not sufficiently developed for the Court to determine as a matter of law that Plaintiff's state law claims arose out of a "riot, civil commotion or mob action," or "out of any act or omission with the prevention of" a riot, civil commotion, or mob action. *See Cox*, at *8, 10-11 (D. Or. Oct. 26,

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

2022) ("[t]he Court finds it need not determine whether Clark's challenge to this Court's jurisdiction is facial or factual because the Court concludes that under either standard Clark's challenge fails."); Rinta Decl, ¶¶ 5, 6, 7, 8, 9 (the parties have not conducted discovery).

Plaintiff addresses both standards, briefly, in turn. A "facial" attack on subject matter jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). The Oregon Supreme Court has also provided that the standard of review "for motion to dismiss claims as barred by provision of the Oregon Tort Claims Act" is to "assume the truth of the well-pleaded facts in plaintiffs complaint." *Sherman v. State by & through Dep't of Hum. Servs.*, 368 Or. 403, 405 (2021) (citing *Doe v. Lake Oswego School District,* 353 Or. 321, 323 (2012)).

The "general rule" is that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is treated as a facial attack, and facial challenge therefore applied, unless those allegations are "denied or controverted" by the movant. *Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1558–59 (9th Cir. 1987). This is true even when the defendant styles the Rule 12(b)(1) motion to dismiss as a "factual challenge" but then fails to actually contest Plaintiff's plausible allegations. *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (vacating and remanding upon holding that district court erred by applying standard for reviewing a factual attack when movant's jurisdictional challenge failed to actually contest the truth of nonmovant's pleaded allegations).

By contrast, when ruling on a "factual" attack to jurisdiction, the Court may consider extrinsic evidence and resolve factual disputes pertaining to jurisdiction, but only to the extent that the disputed facts are not intertwined with facts that go to the merits of the underlying

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

claims. *See Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983) ("[B]ecause jurisdictional fact-finding by the court deprives litigants of the protections otherwise afforded by Rule 56, we have defined certain limits upon this power of the court.") The Ninth Circuit has made clear that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted); *Cox*, at *1 (D. Or. Oct. 26, 2022).

Here Defendant's Motion presents a facial challenge because it does not actually contest Plaintiff's plausible allegations: the City does not assert that Plaintiff engaged in any of the violent or threatening behavior that it attributes to other demonstrators, *see, e.g.,* Def's Mtn., p. 5, and does not contest that Plaintiff was injured when PPB officers fired the weapon at her as she was turned and walking away from officers, *see id.,* p. 6; Def's Ex. 2; Schoening Decl., ¶ 35. As also asserted in the Complaint, Plaintiff did not engage in any violent or threatening behavior, and she left the protest after a total of 40 minutes, in order to seek medical treatment. Opbroek Decl., ¶¶ 3, 14, 16, 17, 18, 19.

Even if the Court finds the City presented a factual attack, the jurisdictional issue is "so intertwined" with the substantive issues and merits of Plaintiff's claims that a ruling is inappropriate here. In order to rule on Plaintiff's underlying constitutional and state law claims, the court would need to determine whether defendants' conduct of shooting a flashbang directly into a crowd was somehow reasonable in light of plaintiff's conduct and the surrounding circumstances. *See e.g. Nelson*, 685 F.3d 867 (9th Cir. 2012). Determining the factual issues regarding the surrounding circumstances—including whether the factual claims in the City's motion to dismiss and exhibits are true-- is central to this case. In addition, assuming *arguendo*

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

that the City's interpretation of ORS 30.265(6)(5) is correct, essential facts including whether a

riot was actually occurring and whether Defendants' conduct arose from a riot are unavailable

for evaluation by Plaintiff, as the parties have not yet conducted document discovery or taken

depositions in this case. Rinta Decl., ¶¶ 5, 6, 7, 8,9. As such, the Motion should be denied, and

issues addressed at summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant

City's Partial Motion to Dismiss in its entirety. In the alternative, this Court should deny

Defendant's motion and certify this question for resolution by the Oregon Supreme Court as an

unsettled question under Oregon law. *See E.J.T. v. Jefferson Cty.*, 370 Or. 215, 220, 518 P.3d

568, 572 (2022) (certifying immunity question under OTCA to the Oregon Supreme Court).

**DATED** this 2nd day of December 2022

s/ *Viktoria Lo*

Viktoria Lo, OSB No. 175487
Maya Rinta, OSB No. 195058
J. Ashlee Albies, OSB No. 051846

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF
PORTLAND'S MOTION TO DISMISS -20

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092