Listing of Legislative records in
Oregon State Archives pertaining to:

HOUSE BILL 1515, 1969
(Introduced by House Judiciary Comm.
at request of League of Ore. Cities,
Assn. of Ore. Counties & Ore. School
Bds. Assn.)
re: governmental tort liability....

HOUSE JUDICIARY COMMITTEE MINUTES:

Mar. 10: p. 2 & 3                          (Also on ROLS Tape 13)
    Attached exhibits:
      1. Joseph T. Henke, Research Attorney, Bur. of Govt. Research & Service,
         Univ. of Ore., explained the bill. 1 page.
      2. Witness Registration re the bill, 10 Mar. 1969. 1 page.
Mar. 14: p. 4                              (Also on ROLS Tape 15)
Apr. 28: p. 2                              (Also on ROLS Tape 29)
May 8: complete calendar of the House cites this date when recommended do pass as
      amended, but no minutes for this date

    Exhibit file contains:
      1. Comments by Joseph T. Henke.(last page the same as Item 1 of attached
         exhibits). 5 pages.
      2. Proposed amendments. 10 Apr. 1969. 2 pages.
      3. Letter from Ronald B. Lansing, Asst. Professor of Law, Northwestern School
         of Law of Lewis and Clark College, Apr. 18, 1969. 2 pages.
      4. Analysis of Proposed Legislation re the bill, Mar. 24, 1969. 1 page.
      5. Letter from Jena Schlegel, Legal Consultant, to Mr. Joseph T. Henke, which
         cites when final action on bill was to occur, May 1, 1969. 1 page.
      6. Letter from Jena Schlegel, Legal Consultant, to Mr. Ron Lansing, Professor
         of Law, Lewis and Clark College of Law, recognising his expertise in
         the area covered by the bill, Mar. 18, 1969. 1 page.

SENATE JUDICIARY COMMITTEE MINUTES:

May 14, 1969: p. 3, 4 & 8                  (Also on Tape 20, side 2, ...to...)
    Attached exhibits:
      1. Testimony by Kurt Engelstad, Assoc. of Ore. Counties, in support of the
         bill. 14 May 1969. 3 pages (Appendix A).

    No exhibit file

7 M attached to minutes
5 E
12 E separate from minutes

Compiled by: M. McQuade, Records Processing Archivist
27 May 1977

Exhibit 1
Page 1 of 26

Page 2
Tape #12
3/10/69

Representative Skelton asked the witness if he had available a copy of the Governor's communication sent out to metropolitan agencies regarding implementation of this program, and a copy of the communication sent out by May Schrunk setting up the local agency under this program. The witness said he did not have these items readily available, and Representative Skelton requested the committee obtain copies of these letters, plus copies of the Safe Streets Act of 1968, for committee records. He commented that apparently criticism from his area, Portland, seems to be that the local governments are not setting out the programs and using the federal funds in the manner in which the Act intends.

Representative Macpherson asked the witness if there wasn't a possibility that these boards and counsels would be repealed and cleared from the statutes, as they can be established under Executive Order. Mr. Thornton answered that he felt these agencies necessarily should be in the statutes to insure specific representation and guidelines. He said that this particular counsel is not simply a vehicle for federal funds, but is coordinating and policy making in nature and cannot serve as such without specific representation on it's governing board.

Representative Haas asked how much money is coming into the state from the federal programs for use by these agencies. Mr. Thornton estimated that 1/4 million came for planning from the Safe Streets Act, slightly in excess of that amount for action grants for the balance of this fiscal year, and during the prior fiscal year the state received $49,000 for riot control and prevention.

The witness concluded that he felt the old law has definite shortcomings, that too many people are trying to tackle separate phases of the problems with no coordination of their efforts. He urged that HB 1261 should be considered carefully by the committee before action is taken.

HB 1515

Jack L. Sollis, Assistant Attorney General assigned to the State Highway Department. The witness commenced his testimony by pointing out that on page 3, line 29, and on page 4, line 15 of the printed bill there appears to be a conflict in language, in regards to determining whether a notice is required when an action is against an employee and not against a public body. He feels this should be reworded to carry clear intent that notice is required in all instances. Representative Carson asked the witness if the 45-day requirement for notice could be extended to a longer period of time, 60 or 90 days. Answer was that it would be 45 days, as it is too difficult to investigate the incident after a longer period of time, and for insurance purposes the initial notice of damage should be made immediately.

Exhibit 1
Page 2 of 26

He stated that this was a statute of limitation in effect, but that the initial notice would be simply a letter or some simple form of notice and that the specific amount of demand would not have to be made at that time. It would be to advise the agency that injury or damage had been sustained, and claim would be made therefor.

Joseph Henke, attorney in research, University, and of the Bureau of Governmental Research. Mr. Henke told the committee that it was his principal responsibility to draft HB 1515, and entered into committee records two documents giving the background and commentary of the provisions of the bill. Hestated that the existing law needed more definition and clarification and that the proposed changes are basically mechanical and referred the committee's attention to the summary outline of the bill, a copy of whish is filed with committee records. The main change in liability coverage that the bill would accomplish would be to include the public employee under provisions also applicable to public bodies.

Chester Ott, of the Department of General Services, stated that he was present only to answer any questions of the committee regarding the Oregon Insurance policies. Representative Young asked if the witness had figures for the actual cost of the state insurance. Basic liability policy, which covers all state agencies and employees, premium plus tax for the first year (1968) was approximately $383,000. Additional insurance for vessels, $4,000; aircraft, $12,000 and Excess Limits policy protecting state agencies, officers and agents up to $3,000,000 was $175,000, for an approximate fiscal total of $573,000 for 1968. He commented that there would be a substantial savings in the excess limits policy if this bill should pass into law.

Grant T. Anderson, attorney from Portland, and appearing for the Portland School Board and the Oregon School Board Association. He expressed approval for the intent of the bill, but suggested amending to protect the school employee. He feels that the liability coverage should be equal to coverage for the state agency or employee, and this amendment would receive support of the Oregon School Board Association. No questions of the witness.

HB 1100 and 1108

Representative Macpherson reported from subcommittee on both bills. It was the committee's recommendation that HB 1108 be tabled, and that HB 1100 be amended to clarify language. Representative Macpherson moved that HB 1108 be tabled, and motion passed unanimously. The chairman then instructed the committee counsel to prepare further amendments to HB 1100 for the committee's consideration.

HB 1333

Representative Macpherson reported from subcommittee, and after discussion

Exhibit 1
Page 3 of 26

EXPLANATION OF HOUSE BILL 1515

The 1967 Oregon legislature abrogated in large part the doctrine of governmental immunity which historically had barred tort claims against the state of Oregon and local governments. The purpose of House Bill 1515 is to make certain additions and refinements to this 1967 legislation, now codified as ORS 30.260 to 30.300.

Most of the amendments offered in House Bill 1515 clarify language or change mechanics rather than expand or limit liability. Sections 3, 4, 5 and 7 of the bill and parts of Sections 1 and 2 are for these purposes. Sections 10 and 11 eliminate conflicts with other earlier legislation. The reasons for each of these changes are detailed in the section by section comments which accompany this memorandum.

The interest of the public will be best served by shielding public bodies from tort claims arising out of certain uniquely governmental risks. Exposure of governments to tort liability in the same way as private persons is desirable, but some governmental activities are not comparable to activities of private persons and corporations. Thus, Section 8(2), 8(3) and 8(5) clearly establish governmental immunity to claims arising out of licensing, inspection and dissemination of information. Section 8(1) makes clear that discretionary decisions concerning the establishment and extent of police and fire protection service cannot be the basis of liability. Section 8(6) bars claims based on civil disorder.

Section 1 limits claims to those based on some form of physical injury to person or property. The effect of this limitation is to bar claims for torts which result only in pecuniary loss. Such torts are of two types: intentional torts for which damages are essentially punitive rather than compensatory, such as libel, and negligent conduct which results in a monetary loss, such as failure to record an instrument. Exposure of public bodies to liability for such intentional torts is undesirable because of the personal nature of the action and punitive character of damages. Other claims for entirely non-physical damage are adequately compensable through liability of specific officers, such as county clerks, who commonly carry errors and omissions insurance to cover the particular risks of their office. Acquisition of comprehensive governmental liability insurance to cover such claims is difficult and expensive. The remedy of a claimant against the individual who commits torts of these types is adequate and more appropriate.

Public officers, employes and agents have always been liable for their torts committed within the scope of their employment. However, for some activities and in some situations their exposure to liability is not warranted. Therefore, Section 8 extends immunity to public officers, employes, and agents for a number of activities such as licensing, inspection and dissemination of information. Section 9 protects public officials against claims based on a theory of vicarious liability. Section 8(7) makes clear that public employes are immune from liability for enforcing a law in good faith without knowledge that it is invalid or inapplicable. Section 2 extends the monetary liability limits of public bodies to their employes in order to facilitate purchase of complete insurance coverage for employes as additional named insureds on their employer's policies.

Prepared by Joseph T. Henke
Research Attorney
Bureau of Governmental Research and Service
University of Oregon

Exhibit 1
Page 4 of 26

# WITNESS REGISTRATION

_House_ Committee on _Judiciary_
Senate or House      Name of Committee

Date: **3-10-69** Time: **3:00 pm** Room: **20-A**

▷ Public Hearing on **1515** ◁
(Measure No.)

Please register if you wish to testify on the above-named measure.

| Name and address | Representing | For | Against |
|---|---|---|---|
| Jack L. Sochis<br>State Highway Comm. | State Highway Dept | 🖊 | |
| Joseph T. Henke<br>Bur. of Gov't Research | Bureau of Governmental Research | X | |
| Robert Y. Thornton<br>Louis S. Bonney | Dept of Justice | 🖊 | |
| Chester W. Orr | Director, Dept of Gen Services | ✓ | |
| Grant Anderson | Ptld Atty. King Miller Anderson | | |
| Lou Bonney | Atty Gen's Office | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Exhibit 1
Page 5 of 26

March 14, 1969
Page Four

HB 1712

Rep. Haas reported.  He moved that we accept the committee
report and table the bill.  Affirmative:  Anunsen, Cole, Frost, Haas,
MacPherson.  Negative:  Skelton, Young, Wilson.  Passed.

HB 1515

Rep. Skelton spoke on the philosophy of the bill and the
results of amending the existing law.  The Chairman appointed Rep.
Carson, Frost, and Skelton to study the bill and present amendments.

HB 1632

Rep. Cole reported that the committee recommendation was a
do-pass.  He made the recommendation into a motion.  Unanimously passed.
Rep. Carson is to present the bill to the House.

HB 1637

Rep. Skelton reported on the background of this measure.  Rep.
Young also reported the comments made the by Chief Justice regarding the
opinion of the court.  Rep. Skelton made the motion that we table this
bill.  The Majority voted for the motion with Anunsen and Cole dissenting.

HB 1636

Rep. Cole reported a do-pass recommendation from Subcommittee I.
He made a similar motion and it passed unanimously.  Rep. Anunsen to carry.

HB 1579

Rep. Haas reported on this measure.  This is to increase the
small claim court jurisdiction to a limit of $500.  There was committee
discussion.  Rep. Cole and Haas were assigned to study the bill and
make recommendations.

HB 1626

Rep. Don Wilson reported on this bill as its sponsor.  It was
his feeling that there are too many papers requiring notarization for no
apparent reason.  This measure would require that an unsworn statement
be made by an individual certifying the truth of the paper, if the paper
were other than an instrument of conveyance.  After more study, some
amendments will be offered to the committee.

Exhibit 1
Page 6 of 26

p2
4/28/69

After extensive discusssion of the bill  by the committee, the Chairman re-
quested that Mr. Carson research further and present the bill again at next
work session.

HB 1669

          After short discussion with  the committee,  Representative Pynn
suggested that further action on this bill  be deferred; no objection voiced
by  any committee member.

HB 435

          Representative Carson reported on the bill from committee.  At the
request of Chairman Wilson, Senator Don Husband appeared before the committee
explaining the practical aspects of the trust deed, and the merits of this
bill as heard through testimony before the Senate Judiciary  Committee.  There
followed extensive discussion by  the committee, and the Chairman requested that
-the committee counsel draft proposed amendments to the bill, to be ready for
worksession on  Wednesday.

HB 1515

          Representative Carson reported on the bill from his subcommittee.
The committee proceeded through the proposed amendments of 4/10/69. section by
section, and after extensive questions and discussion by the committee, it
was requested that Representatives Haas and Carson, and any interested committee
members, meet to prepare further amendments to the bill.

HB 1452

          Representative Wilson questioned the committee if any had intention
to reconsider his vote in tabling this bill.  None had, and the discussion was
closed.

          There being no further business before the committee, the  Chairman
adjourned at 5:00 p.m.

                         Respectfully submitted,

                         *Carol Doerksen*
                         Carol  Doerksen, Clerk

Exhibit 1
Page 7 of 26

EXPLANATION OF HOUSE BILL 1515

The 1967 Oregon legislature abrogated in large part the doctrine of governmental immunity which historically had barred tort claims against the state of Oregon and local governments. The purpose of House Bill 1515 is to make certain additions and refinements to this 1967 legislation, now codified as ORS 30.260 to 30.300.

Most of the amendments offered in House Bill 1515 clarify language or change mechanics rather than expand or limit liability. Sections 3, 4, 5 and 7 of the bill and parts of Sections 1 and 2 are for these purposes. Sections 10 and 11 eliminate conflicts with other earlier legislation. The reasons for each of these changes are detailed in the section by section comments which accompany this memorandum.

The interest of the public will be best served by shielding public bodies from tort claims arising out of certain uniquely governmental risks. Exposure of governments to tort liability in the same way as private persons is desirable, but some governmental activities are not comparable to activities of private persons and corporations. Thus, Section 8(2), 8(3) and 8(5) clearly establish governmental immunity to claims arising out of licensing, inspection and dissemination of information. Section 8(1) makes clear that discretionary decisions concerning the establishment and extent of police and fire protection service cannot be the basis of liability. Section 8(6) bars claims based on civil disorder.

Section 1 limits claims to those based on some form of physical injury to person or property. The effect of this limitation is to bar claims for torts which result only in pecuniary loss. Such torts are of two types: intentional torts for which damages are essentially punitive rather than compensatory, such as libel, and negligent conduct which results in a monetary loss, such as failure to record an instrument. Exposure of public bodies to liability for such intentional torts is undesirable because of the personal nature of the action and punitive character of damages. Other claims for entirely non-physical damage are adequately compensable through liability of specific officers, such as county clerks, who commonly carry errors and omissions insurance to cover the particular risks of their office. Acquisition of comprehensive governmental liability insurance to cover such claims is difficult and expensive. The remedy of a claimant against the individual who commits torts of these types is adequate and more appropriate.

Public officers, employes and agents have always been liable for their torts committed within the scope of their employment. However, for some activities and in some situations their exposure to liability is not warranted. Therefore, Section 8 extends immunity to public officers, employes, and agents for a number of activities such as licensing, inspection and dissemination of information. Section 9 protects public officials against claims based on a theory of vicarious liability. Section 8(7) makes clear that public employes are immune from liability for enforcing a law in good faith without knowledge that it is invalid or inapplicable. Section 2 extends the monetary liability limits of public bodies to their employes in order to facilitate purchase of complete insurance coverage for employes as additional named insureds on their employer's policies.

Prepared by Joseph T. Henke
Research Attorney
Bureau of Governmental Research and Service
University of Oregon

Exhibit 1
Page 8 of 26

COMMENTS ON HOUSE BILL 1515
BY SECTION

### Section 1.

ORS 30.265(1)(d) is deleted because its wording has caused confusion and because it could be interpreted as preserving immunity in cases of strict liability such as may arise out of extra-hazardous activities or the sale of products.  The purpose of this section is accomplished by a new provision, Section 8(4), which applies both to public bodies and public employes.

Existing subsection (2)(f) is reworded to make clear that it refers only to statutory immunity from tort claims and not common law immunity.

New subsection (2)(f) is added to bar claims based solely on non-physical damage such as pain and suffering or loss of business.  It is difficult and costly to obtain liability insurance for such non-physical injury or damage.  It appears  more appropriate in the case of such intentional torts as libel, slander, invasion of privacy and interference with contractual relations to leave the injured party with his remedy against the individual employe who has committed such a personal tort.  Officials such as sheriffs and county clerks would be obliged to continue to carry specialized errors and omissions insurance personally in order to cover the risks peculiar to their functions.  Non-physical damages arising as a consequence of bodily injury or property damage would not be barred by this section.

### Section 2.

The preamble of this subsection is changed from "on any claim" to "on claims" to make clear that the following limitations apply to all claims rather than each claim separately.  New language is added which extends the monetary liability limits of public bodies to their employes in order to facilitate purchase of complete insurance coverage for employes as additional named insureds on governmental liability insurance policies.

Subsection (1)(a) has been changed to limit property damage per occurrence rather than per claim to facilitate the purchase of liability insurance, which is ordinarily written with a property damage limit per occurrence rather than per claim.

Subsection (1)(c) is added to make clear that a claimant's total claim for bodily injury and property damage cannot exceed $50,000.

Subsection (3) has been altered to account for the change in subsection (1).

Exhibit 1
Page 9 of 26

### Section 3.

The specific directions as to the persons to whom claims are to be presented are added to subsection (1) to eliminate an existing confusion. There are presently several other statutes dealing with claims against the state of Oregon. See ORS 179.210-179.250, ORS 293.321 and ORS 366.430. These other statutes are not changed, but it is made clear that for purposes of tort claims the notice requirement can be satisfied in the specific manner stated. The persons designated to accept the notice are the same persons who would accept service of process in a legal action.

The limitation of subsection (3) has been applied to minors and incompetents in order to assure settlement of multiple claims within a reasonable time. The courts of many states have held notice requirements to be tolled during periods of minority or incompetency.

### Section 4.

Instances have arisen in which local officials have been reluctant to assist public employes because of doubt as to whether the act or omission in question was in the performance of duty or constituted malfeasance in office or wilful or wanton neglect of duty. If this section is to have its intended effect in such cases, it appears best to leave the question of eligibility to the initial judgment of the local government involved.

### Section 5.

This amendment extends the application of the section to all charter provisions whether adopted under home rule powers or not, but limits its application to charter provisions in conflict with the act, in the same manner as is done for laws and ordinances. The exclusive language is removed to allow non-conflicting state and local laws on the subject.

### Section 7.

Generally, private individuals in Oregon are negligent per se if they fail to comply with a statutory duty unless the failure to comply was unavoidable. McConnell v. Herron, 240 Or. 486, 402 P.2d 726 (1965). Because of the many and broad duties explicitly imposed on public bodies by law, it is more appropriate to limit liability to instances of failure to exercise reasonable care.

### Section 8(1)

Although the decision as to the amount of police or fire protection that will be provided should be considered a discretionary function for which

-2-

Exhibit 1
Page 10 of 26

immunity is preserved under ORS 30.265(2)(e), the proposed new Section 7 might allow grounds for arguing that an affirmative duty is imposed to supply adequate police or fire protection to the public at large. Negligence in carrying out police and fire operations could still be the basis of liability.

## Section 8(2)

Immunity of public bodies and public employes for licensing activities is common in other states. Administrative and judicial review would appear to be the appropriate remedy rather than a tort action for a negligent or wrongful denial or issuance of a license. In instances of claims by members of the public injured or damaged as a result of a licensed activity, imposing liability on the public body or its employe for negligence in issuance of the license would tend to make the public an insurer of the quality of all activities regulated. Such an exposure to liability would place a burden on licensing activities which would discourage their assumption by public bodies.

## Section 8(3)

The comment for Section 8(2) is applicable to this section as well.

## Section 8(4)

This section is intended to replace ORS 30.265(2)(d). It states a fundamental immunity of the discretionary legislative and administrative functions which has been recognized in all jurisdictions.

## Section 8(5)

This section is intended to preserve immunity for the many educational and information services of governments, such as weather reporting or county extension services.

## Section 8(6)

This section is added to preserve immunity from claims arising out of civil disturbances. Preservation of immunity in this instance is common in other states. It does not bar claims for torts committed by public employes during the course of civil disturbances, but would preclude claims based on a theory that a public body caused or failed to prevent a civil disturbance. Liability insurance policies commonly exclude coverage of this risk.

Exhibit 1
Page 11 of 26

### Section 8(7)

This is adapted from Section 820.6 of the California Government Code.  This section abrogates the Oregon rule which made a public employe liable for enforcing an invalid statute even though done in good faith without knowledge of its invalidity.

### Section 9.

This section precludes the possibility of public officials being held vicariously liable as suggested by some Oregon cases.  Officials remain liable for their own negligent or wrongful conduct.

### Section 10.

The words "and not otherwise" are stricken because they apparently bar action in tort.  See Rapp v. Multnomah County, 77 Or. 607, 152 P. 243 (1915). Since no suit or action is permitted against public bodies except where permitted by statute, the removal of these words has no substantive effect, but eliminates an obvious conflict with the intent of ORS 30.260 to 30.300. See Vendrell v. School Dist. No. 266, 226 Or. 263 (1961).

The second sentence has been rewritten to clarify its meaning and eliminate it as a basis for making a distinction between corporate and proprietary functions.

The third sentence has been added to make clear the legislative intent that ORS 30.320 should not limit actions created or permitted by ORS 30.260 to 30.300.

### Section 11.

ORS 221.924 is obviously in conflict with intent of ORS 30.260 to 30.300.

Prepared by Joseph T. Henke
Research Attorney
Bureau of Governmental Research and Service
University of Oregon

-4-

Exhibit 1
Page 12 of 26

PROPOSED AMENDMENTS TO HOUSE BILL 1515

On page 2 of the printed bill, line 3, delete "30.270," and in the same line delete "30.300," and after "221.924;" insert "repealing ORS 366.430, 368.940 and 382.320!".

In line 11, after "(2)" delete the rest of the line and insert "Every public body is immune from liability for:".

Delete lines 27 through 32 and insert:

"(3) Neither a public body nor its officers, employes and agents acting within the scope of their employment or duties are liable for injury or damage because of:

"(a) Dissemination of information, failure to disseminate information, dissemination of erroneous information, or negligent misrepresentation.

"(b) The failure to prevent riot, unlawful assembly, public demonstration, mob violence or other civil disturbance.

"(c) An act done or omitted under apparent authority of a law, resolution, rule or regulation which is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice.".

On page 3, delete lines 3 through 27.

In line 28, delete "3" and insert "2".

Exhibit 1
Page 13 of 26

In line 32, delete "45" and insert "180".

On page 4, line 21, delete "4" and insert "3".

In line 22, delete "may" and insert "shall".

Delete page 5.

On page 6, delete lines 1 through 8.

In line 9, delete "10" and insert "4".

In line 24, delete "11" and insert "5".

On page 7, after line 5, insert:

"Section 6.   ORS 366.430 368.940 and 382.320 are repealed.".

In line 6, delete "12" and insert "7".

Exhibit 1
Page 14 of 26

0615 S.W. Palatine Hill Road  *3.*
Portland, Oregon 97219
Telephone 636-3601

**Northwestern School of Law
of Lewis and Clark College**

April 18, 1969

The Honorable Don Wilson
House of Representatives
Committee on Judiciary
State Capitol Building
Salem, Oregon 97310

Dear Don:                    Re:  House Bill 1515

I have your letter asking for my comments on the
Proposed Amendments to the above bill regarding the
Oregon Tort Claims Act.

The Amendments look good to me.  However, I have two
suggestions:

     (1)  On the Proposed Amendments, I suggest you omit
the following language:

     "(3)  Neither a public body nor its officers,
            employes and agents acting within the
            scope of their employment or duties are
            liable for injury or damage because of:"

I do not believe it is necessary to say this.  I would,
therefore, make the sub-headings (a), (b), and (c) of the
Proposed Amendments merely continued exceptions under
ORS 30.265(2).  Thus, these exceptions would become sub-
paragraphs (f), (g), and (h) under ORS 30.265(2).

     (2)  I suggest that the word "not" be deleted from
the second sentence in ORS 30.280(2), so that sentence
will read: "The procurement of such insurance shall
be deemed a waiver of immunity."  My reasons therefor are
set forth in my Law Review article (47 Or. L. Rev. 357).
I here quote freely from that article, at page 370:

        "The insurance features of the OTCA are, indeed,
     a curiosity.  In 1959, the Oregon Legislature amended
     Or. Rev. Stat. sec. 243.110 to provide that if
     liability insurance was purchased by a public body,

Exhibit 1
Page 15 of 26

The Honorable Don Wilson         -2-        4/18/69

"then the insurer could not assert governmental
immunity as a defense.  Furthermore, in 1961, the
Supreme Court of Oregon held that the purchase of
liability insurance by a public body effects a
waiver of governmental immunity to the extent of
the insurance coverage.  The Minnesota Torts Claims
Act expressly provides that the procurement of
liability insurance constitutes a waiver of the
defense of governmental immunity to the extent of
such coverage purchased.

"Strangely, however, the drafters of the new
OTCA did a complete reversal.  They repealed the
eight-year-old Or. Rev. Stat. sec.243.110.  They
rejected the Oregon Supreme Court's policy as laid
down in the Vendrell case.  They chose not to follow
the parent Minnesota Tort Claims Act.  Rather, they
inserted the word 'not' into the Minnesota language
thus making it read that insurance 'shall not be
deemed a waiver of immunity.'" (emphasis added)

"Thus, under the new Act, an incongruous situation
presents itself:  a public body is authorized to
purchase liability insurance to cover situations where
there can be no liability."

Very truly yours,

Ronald B. Lansing
Assistant Professor of Law

RBL/dm

Exhibit 1
Page 16 of 26

PREPARED BY:

  BUDGET DIVISION

  DEPARTMENT OF FINANCE

STATE OF OREGON
ANALYSIS OF PROPOSED LEGISLATION
1969 Regular Legislative Session
FORM BF 20

| ANALYST | DATE COMPLETED |
|---|---|
| Cooper | 3/20/69 |

| 1. NUMBER OF MEASURE | 2. STATUS | 3. CLASS OF BILL |
|---|---|---|
| HB 1515 | Original | FISCAL ☒  NON-FISCAL ☐ |

**4. SUBJECT**

  Revises scope of governmental tort liability, related procedural provisions and recovery limitations.

**5. GOVERNMENT UNIT OR PROGRAM AFFECTED**

  Dept. of General Services

**6. FISCAL IMPACT**

Passage of this bill would result in a substantial savings of approximately $150,000 on annual premium of $170,000 for particular coverage involved.

**7. FISCAL OFFICE**

Analyst:   Duane F. Wolfe
Date:      March 24, 1969

Reviewed by Legislative Fiscal Office.

Exhibit 1
Page 17 of 26

5.

May 1, 1969

Mr. Joseph T. Henke
Bureau of Government Research
University of Oregon
Eugene, Oregon

Dear Mr. Henke:

      Enclosed are copies of the proposed amend-
ments to HB 1515 which the subcommittee is recommending
to the full committee.  It will be on the agenda for
action on May 5 at 3:00 p.m.  If you wish to make any
recommendation, a letter should be received by them
prior to that time.

                    Yours very truly,


                    Jena Schlegel
                    Legal Consultant

JS:bjs

Enclosure

Exhibit 1
Page 18 of 26

6.

HB 1515

March 18, 1969

Mr. Ron Lansing,
Professor of Law
Lewis & Clark College of Law
0615 S. W. Palatine Hill Rd.
Portland, Oregon

Dear Ron:

      Your expertise in the area coverdd by this bill
was acknowledged by the members of the House Judiciary
Committee the other day and they requested if possible
that you give us the benefit of your comments on the
proposed legislation.  I know you are busy, but if you
could get some word back to us within the next few days
it would be greatly appreciated.

                           Yours very truly,


                           Jena Schlegel
                           Legal Consultant

JS:bjs

Enclosure

Exhibit 1
Page 19 of 26

Page 3, Minutes
Senate Judiciary Committee
May 14, 1969

(4)   In section 5, delete the second sentence.

(5)   Amend page 3, line 20, to read:  "If the defendant admits paternity judicially or in writing or if the court finds from a preponderance of evidence that the defendant is the father of the child . . . "

(6)   Page 3, line 30, delete "have the power to".

(7)   Page 3, line 31, after "the" insert "past, present and".

(8)   Page 4, line 1, delete "may" and insert "shall".

(9)   Delete "but not including attorney fees" on page 4, line 2. In the field of domestic relations, Mr. Hart said, these types of cases were gravitating toward public prosecutors and bureaucratic lawyers and he was of the opinion that private attorneys should be permitted to handle them.

(10)   Delete section 7 or include a limitation of seven years or more.

At a later point in the meeting Mr. Walter Fuchigami arrived to testify with respect to HB 1310.  He urged that subsection (1) (b) of section 1, deleted by the House, be restored to the bill and also maintained that the statute of limitations be lengthened in section 7.

House Bill 1836

Representative Jason Boe advised that Judge Robert Jones of Multnomah County had confronted the House Judiciary Committee with a group of drug addicts whose testimony had convinced the members that it would be helpful to form a committee consisting of persons addicted to drugs or who had been rehabilitated from their addiction.  The committee would form teams whose specific job would be to visit and talk with junior and senior high school students.

Representative Boe said that at Dammasch State Hospital there are approximately 20 people under treatment at all times for "bad trips", "freak outs" and assorted symptoms caused by drugs.  The average age of these patients is between 18 and 19 years of age and the youngest is 12.

The bill appropriates $17,500 to carry out the program.  The sum was cut from $35,000 because there will be federal funds available in at least an amount matching the $17,500 to get the program started in Oregon.

House Bill 1515

Mr. Joseph Henke, attorney with the Bureau of Governmental Research at the University of Oregon, appeared on behalf of the League of Oregon Cities to speak in support of House Bill 1515 as amended.

Exhibit 1
Page 20 of 26

He explained that section 1 would add immunity both for public bodies and public officers, employes and agents acting within the scope of their duties if the injury arose from riot conditions or an act performed under authority of law, resolution or rule.

Section 2 with respect to the liability limits, Mr. Henke said, was intended to clarify the application of those limitations and would facilitate the purchase of liability insurance by local governments.

Section 3 changed the time limit for filing claims from 45 to 180 days which was in line with the time permitted in other states.

Mr. Kurt Engelstad read a written statement in support of HB 1515, a copy of which is attached hereto as Appendix A.

House Bill 1229

Chairman Yturri advised that the Senate had passed Senate Bill 106 which was the same as House Bill 1229.  He and the Chairman of the House Judiciary Committee had agreed that the House would act on the Senate bill and HB 1229 could be tabled.

Senator Burns moved that HB 1229 be tabled and the motion carried unanimously with all members present.

Senate Bill 193

Chairman Yturri advised the committee that reconsideration of Senate Bill 193 for the purpose of further amendment at today's meeting would have no effect on the date the bill would be on Third Reading in the Senate.  He further apprised the committee that objection had been raised to the definition of "hospital" in section 1 of SB 193 as previously adopted by the committee.  Representative Crothers had indicated that the phrase "which has a full-time staff of physicians" would restrict the bill to hospitals operated by medical schools.  Kathleen Beaufait had suggested that the phrase be deleted and the following substituted:  "but not including nursing homes or convalescent homes".  This was Senator Hoyt's original intent in including the phrase referring to a full-time staff of physicians.  He noted that Senator Willner also had additional amendments he wished to propose if the bill were reconsidered.

Senator Burns stated that he construed the "environmental clause" to be the Scandinavian approach and to be essentially no different than and as liberal as Senate Bill 182 because there was no criteria contained in that clause for determining the grounds for performing an abortion.  If the bill were reconsidered, he said he would make a motion with respect to that clause.

Senator Willner indicated he had no objection to the clause as written because he did not interpret it in the manner stated by Senator Burns.  (The "environmental clause" referred to will be found

Exhibit 1
Page 21 of 26

Page 8, Minutes
Senate Judiciary Committee
May 14, 1969

Senator Willner moved that lines 10, 11 and 12 on page 2 of the printed bill be restored. The motion carried. Voting for the motion: Senators Eivers, Husband, Jernstedt, Lent, Willner and Mr. Chairman. Voting no: Senators Burns and Eivers.

Senator Lent moved that "past and" be inserted after "the" on page 3, line 31. The motion carried without opposition.

Senator Burns said Mr. Hart made a good point with respect to permitting private attorneys to handle filiation cases and moved that the following be deleted from line 2, page 4: "but not including attorney fees". The motion carried.

Senator Willner moved that HB 1310 be reported out do pass as amended and the motion carried. Voting for the motion: Senators Eivers, Fadeley, Husband, Jernstedt, Lent, Willner and Mr. Chairman. Voting no: Senator Burns.

## House Bill 1515

Following a brief discussion, Senator Lent moved that House Bill 1515 be reported out do pass and the motion carried. Voting for the motion: Senators Fadeley, Jernstedt, Lent, Willner and Mr. Chairman. Voting no: Senators Burns, Eivers and Husband.

## House Bill 1836

Senator Burns moved that House Bill 1836 be given a do pass recommendation and the motion carried unanimously with the same eight members voting as had voted on the previous motion.

## Senate Bill 188

Senator Husband explained that the House amendments to Senate Bill 188 modernized the Model Business Corporation Law in some minor details and moved that the Judiciary Committee recommend concurrence with the House amendments. The motion carried unanimously.

## House Bill 1626

Senator Lent moved that House Bill 1626 be removed from the deferred section of the committee books. Motion carried.

At this point a quorum was no longer present and the meeting was adjourned at 3:00 p.m.

Respectfully submitted,

Mildred E. Carpenter, Clerk
Senate Judiciary Committee

Tape 20 - Side 2

Exhibit 1
Page 22 of 26

Appendix A
May 14, 1969

STATEMENT OF THE ASSOCIATION OF OREGON COUNTIES

Regarding HB 1515 as amended

The Association of Oregon Counties is in general accord
with HB 1515 as amended because of the improvements it makes
to the 1967 Governmental Tort Liability Act.   (Chapter 627
Oregon Laws 1967)

However, we object to the repeal of ORS 368.940 and
382.320, as provided on page 2 of the printed House Amend-
ments at line 23.

ORS 368.940 limits the liability for tort claims arising
from county roads at $10,000.

ORS 382.320 limits the liability for tort claims arising
from Multnomah County's bridges across the Willamette River
at $2,000.

These two sections were not included in the 1967 Act.   We
feel there is a valid public policy consideration involved in
retaining these limits as well as repealing them, and we ask
you to consider both.

With repeal of these sections, the liability limits for
tort claims against public agencies will be uniform for all
governmental torts, except those for which public bodies
specifically remain immune.   This is the public policy ques-
tion which was resolved by the House Judiciary Committee in
adopting amendments to repeal ORS 368.940 and 382.320.

We feel that there is also the policy question of public
value of the county road system throughout the state and how
the proposed repealers would affect this system.

Exhibit 1
Page 23 of 26

In 1967, Lincoln County was held liable in a tort claim
action arising from an accident which occurred on one of the
county roads.  It is our layman's view that plaintiff prevailed
in the case, in part, because the road upon which the accident
occurred was found to be too narrow, a condition of which the
county had prior notice.

This road happened to be located in mountainous  terrain
and was used by log trucks, although a log truck was not involved
in the accident nor was a county vehicle.  Because of its
limited road funds, Lincoln County could not proceed to widen
the road, and was at one time seriously considering its closure,
as a safeguard against additional litigation.

There are two points of interest with regard to county roads
which we believe are involved.  First, the Bureau of Public Roads
has established more rigorous standards for all roads which are
constructed with federal funds, thus increasing their cost and
also enhancing their safety.  Counties are striving to meet
these standards.  Their ability to meet these standards and road
needs in general bring me to our second point; that is the
recent Oregon State University Transportation Research Institute
study on road needs.

That report shows that counties will need $1,157,790,300
in additional revenue to bring existing county roads up to
standards in the next 20 years.  The report included the needs
of the Multnomah County bridges over the Willamette River.

It is our view that the increase of the liability limits
which would be effected by the repeal of ORS 368.940 and

Exhibit 1
Page 24 of 26

382.320, would further incumber the efforts of counties to improve their road systems.

A valid argument can be made for the variance in limits set by the three statutes proposed to be repealed.  These limits are respectively, $500 for State Highways, $10,000 for county roads and $2,000 for Multnomah County bridges.  The committee may wish to consider amendments to these statutes which would set a uniform limit of $10,000.

Exhibit 1
Page 25 of 26

Listing of Legislative records in
Oregon State Archives pertaining to:

HOUSE BILL 1515, 1969
(Introduced by House Judiciary Comm.
at request of League of Ore. Cities,
Assn. of Ore. Counties & Ore. School
Bds. Assn.)
re: governmental tort liability....

HOUSE JUDICIARY COMMITTEE MINUTES:

Mar. 10:   p. 2 & 3                        (Also on ROLS Tape 13)
    Attached exhibits:
        1.  Joseph T. Henke, Research Attorney, Bur. of Govt. Research & Service,
            Univ. of Ore., explained the bill. 1 page.
        2.  Witness Registration re the bill, 10 Mar. 1969. 1 page.
Mar. 14:   p. 4                           (Also on ROLS Tape 15)
Apr. 28:   p. 2                           (Also on ROLS Tape 29)
May 8:   complete calendar of the House cites this date when recommended do pass as
         amended, but no minutes for this date

    Exhibit file contains:
        1.  Comments by Joseph T. Henke.(last page the same as Item 1 of attached
            exhibits). 5 pages.
        2.  Proposed amendments. 10 Apr. 1969. 2 pages.
        3.  Letter from Ronald B. Lansing, Asst. Professor of Law, Northwestern School
            of Law of Lewis and Clark College, Apr. 18, 1969. 2 pages.
        4.  Analysis of Proposed Legislation re the bill, Mar. 24, 1969. 1 page.
        5.  Letter from Jena Schlegel, Legal Consultant, to Mr. Joseph T. Henke, which
            cites when final action on bill was to occur, May 1, 1969. 1 page.
        6.  Letter from Jena Schlegel, Legal Consultant, to Mr. Ron Lansing, Professor
            of Law, Lewis and Clark College of Law, recognising his expertise in
            the area covered by the bill, Mar. 18, 1969. 1 page.

SENATE JUDICIARY COMMITTEE MINUTES:

May 14, 1969:   p. 3, 4 & 8               (Also on Tape 20, side 2, ...to...)
    Attached exhibits:
        1.  Testimony by Kurt Engelstad, Assoc. of Ore. Counties, in support of the
            bill.  14 May 1969.  3 pages (Appendix A).

    No exhibit file

7 M
5 E  attached to minutes
12 E  separate from minutes

Compiled by:  M. McQuade, Records Processing Archivist
27 May 1977

Exhibit 1
Page 26 of 26