IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MEGHAN OPBROEK, | Case No. 3:22-cv-00610-JR |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| CITY OF PORTLAND, a municipal corporation, ZACHARY DOMKA, in his individual capacity, BRENT TAYLOR, in his individual capacity, MARK DUARTE, in his individual capacity, and ERIK KAMMERER, in his individual capacity, | |
| Defendants. | |

RUSSO, Magistrate Judge:

    Defendant the City of Portland ("City") moves to dismiss plaintiff Meghan Opbroek's state law claims pursuant to Fed. R. Civ. P. 12(b)(1) and the Oregon Tort Claims Act ("OTCA"), Or. Rev. Stat. § 30.265. For the reasons stated below, the City's motion should be denied.

Page 1 – FINDINGS AND RECOMMENDATION

**BACKGROUND**

In the weeks following the police killing of George Floyd, plaintiff attended and supported Black Lives Matter demonstrations. First Am. Compl. ("FAC") ¶ 10 (doc. 5). On June 26, 2020, at approximately 1:00 a.m., plaintiff attended a demonstration near the Portland Police Bureau's ("PPB") North Precinct on N.E. Martin Luther King, Jr. Blvd. *Id.* at ¶ 12. At the time plaintiff arrived, she observed police "officers wearing armor, helmets, and face shields." Opbroek Decl. ¶ 4 (doc. 64). Plaintiff saw officers holding "a variety of different weapons, including batons, flashbang grenades, [and] shotgun-type firearms." *Id.*

Some of the individuals present at the North Precinct blocked traffic, threw projectiles such as bottles, pointed green laser lights towards officers, and erected barricades. Manlove Decl. Ex. 3, at 6-7 (doc. 19); Schoening Decl. ¶ 14 (doc. 20). Individuals, including plaintiff, shouted phrases at police such as "fascist pigs," and vocalized chants such as "Black Live Matter," "who's streets, our streets," and "who do you protect, who do you serve." FAC ¶ 16 (doc. 5); Opbroek Decl. ¶ 7 (doc. 64).

Between 1:10 a.m. and 1:14 a.m., the PPB made six unlawful assembly announcements. Fenske Decl. Exs. 1-3 (doc. 17-1). Some people began leaving. *Id.* Other individuals remained and continued to chant. Opbroek Decl. ¶ 10 (doc. 64). Plaintiff believed "[i]t was important . . . to continue to demonstrate peacefully against the police violence [she] was seeing." *Id.*

Thereafter, officers launched at least one weapon towards the crowd. *Id.* at ¶ 11. This munition created a loud, booming sound and produced smoke near the feet and legs of individuals standing close to plaintiff. *Id.* Plaintiff alleges that moments later police fired a flashbang grenade

Page 2 – FINDINGS AND RECOMMENDATION

or other explosive device towards her, and that this device exploded on or near her body.[1] *Id.* at ¶ 12. Plaintiff received medical treatment from an individual at the demonstration. *Id.* at ¶¶ 15-16. She left the North Precinct area around 2:00 a.m. and went to the emergency room for further treatment for severe pain, wounds, and a concussion. *Id.*; FAC ¶¶ 24-27 (doc. 5). The City maintains that plaintiff was disobeying orders at the time she was injured, whereas plaintiff claims she was acting peacefully and walking away from police. *Compare* Def.'s Mot. Dismiss 5 (doc. 16), *with* Opbroek Decl. ¶¶ 10, 12, 14 (doc. 64).

Plaintiff initiated this lawsuit on April 25, 2022. Via the FAC, she asserts claims against all defendants pursuant to 42 U.S.C. § 1983 for excessive force and retaliation against speech, as well as state law claims for battery, assault, and negligence against the City. Plaintiff provided proper notice of her claims pursuant to Or. Rev. Stat. § 30.275. FAC ¶ 4 (doc. 5).

On June 22, 2022, the City filed a partial motion to dismiss, claiming sovereign immunity from plaintiff's state law claims under the OTCA. The parties thereafter engaged in extensive settlement efforts but were unable to resolve their dispute. Accordingly, briefing was completed in regard to the present motion on March 21, 2023.

**STANDARD**

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). Questions surrounding sovereign immunity are appropriately resolved pursuant

---

[1] The Ninth Circuit prohibits officers from deploying flashbangs blindly around people because they are "inherently dangerous." *Cf. Boyd v. Benton Cnty.*, 374 F.3d 773, 777-79 (9th Cir. 2004) (flashbangs are used unconstitutionally when officers "toss, without either looking or sounding a warning, [them] into an apartment where it was believed that there were up to eight people, most of whom were unconnected to the robbery and many of whom were likely asleep"); *see also Est. of Escobedo v. Bender,* 600 F.3d 770, 784 (7th Cir. 2010) (a flashbang is properly deployed when used to protect officer safety but only if "officers take a moment to look inside a residence or a room to ensure that no one would be injured by the device before tossing it") (citation and internal quotations, brackets, and emphasis omitted).

Page 3 – FINDINGS AND RECOMMENDATION

to a Rule 12(b)(1) motion. *See, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 327-29 (5th Cir. 2013). The party who seeks to invoke the subject matter jurisdiction of the court bears the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may hear evidence regarding subject matter jurisdiction and resolve factual disputes where necessary. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). "The Ninth Circuit has made clear that a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Cox v. City of Portland*, 2022 WL 16552077, at *3 (D. Or. Oct. 26, 2022) (citations omitted).

## DISCUSSION

The resolution of the City's motion hinges on the interpretation of Or. Rev. Stat. § 30.265(6)(e) and whether the actions of plaintiff and/or the non-party individuals at the June 26, 2020, demonstration fall within the ambit of that statute. Section 30.265(6) provides:

> Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598 (Car or van pools), are immune from liability for:
>
> (a) Any claim for injury to or death of any person covered by any workers' compensation law.
>
> (b) Any claim in connection with the assessment and collection of taxes.
>
> (c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.
>
> (d) Any claim that is limited or barred by the provisions of any other statute, including but not limited to any statute of ultimate repose.
>
> (e) Any claim arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing.

Page 4 – FINDINGS AND RECOMMENDATION

> (f) Any claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice.

Or. Rev. Stat. § 30.265(6).[2]

As both parties acknowledge, Or. Rev. Stat. § 30.265(6)(e) has not been thoroughly analyzed in either federal or state caselaw. The City asserts that this subsection immunizes municipalities and their employees from any activities related to or occurring close-in-time to a gathering "where at least five or more people [are] engaged in tumultuous and violent conduct [that creates] a grave risk of public alarm." Def.'s Reply to Mot. Dismiss 11 (doc. 78). According to the City, "it is beyond any reasonable debate that [the conduct that occurred outside the North Precinct on June 26, 2020]—good or bad—arose out of a riot, moment of civil commotion or mob action." Def.'s Mot. Dismiss 12 (doc. 16).

To support its interpretation of the OTCA, the City points to two cases: *Albers v. Whitley*, 546 F. Supp. 726 (9th Cir. 1986), *reversed on other grounds*, 475 U.S. 312 (1986); and *Hicks v. City of Portland*, 2006 WL 3311552 (D. Or. Sept. 13), *adopted by* 2006 WL 3311552 (D. Or. Nov. 8, 2006). In its reply brief, the City additionally cites to criminal anti-riot statutes, common law interpretations of criminal riots from the late nineteenth/early twentieth century, and a case from 1940 that interprets the meaning of "riot" within the context of an insurance policy. Def.'s Reply to Mot. Dismiss 6-14 (doc. 78). The City maintains, in the alternative, that the events at issue

---

[2] The Court notes that the parties' briefing focuses on the terms "riot," "civil commotion," and "mob action," however, the phrases "arising out of" and "in connection with the prevention of" also require analysis to determine the statute's meaning and its applicability to the facts at issue. *Cf. Sheridan v. United States*, 487 U.S. 392, 398-403 (1988) (extensively analyzing "arising out of" in the context of the Federal Tort Claims Act with regard to assault, battery, or negligence).

constituted a civil commotion or mob action. *Id.* at 11-15. The City notes that Oregon statutes and case law do not define "civil commotion" or "mob action," such that the City bases its argument on Black's Law Dictionary and out-of-state caselaw from at least 20 years ago. *Id.*

Plaintiff contends that the City's interpretation of the OCTA is contradictory to statutory analysis and public policy, unconstitutional under Oregon Constitution Article I, Sections 8, 9, and 10,[3] and that the record is not sufficiently developed to make such a factual ruling. Pl.'s Resp. to Mot. Dismiss 7-20 (doc. 63). According to plaintiff, the legislature intended for § 30.265(6)(e) "to clarify the law in order to make it easier for public bodies to get *liability insurance* by making the liability of public bodies more clearly defined and predictable." *Id.* at 11 (doc. 63) (emphasis in original). Plaintiff asserts that, if Or. Rev. Stat. § 30.265(6)(e) was interpreted to remove all remedies when "public officials act[] in violation of the people's constitutional rights, it is also unconstitutionally overbroad." *Id.* at 9. Plaintiff implores the Court to "apply the statutory construction canon of constitutional avoidance and interpret ORS 30.265(6)(e) 'in such a manner as to avoid any serious constitutional problems.'" *Id.* (quoting *State v. Straughan*, 263 Or. App. 225, 234, 327 P.3d 1172 (2014)).

With regard to statutory interpretation, "the court's task is to discern the intent of the legislature." Or. Rev. Stat. § 174.020; *Portland Gen. Elec. Co. v. Bureau of Lab. & Indus.*, 317 Or. 606, 610, 859 P.2d 1143 (1993). The court must consider the statutory text and context, and

---

[3] Article I, § 8 ensures rights to freedom of speech and assembly, while § 9 protects against unreasonable searches and seizures. Article I, § 10 provides that "every [person] shall have remedy by due course of law for injury done to [their] person, property, or reputation." Or. Const. Art. I, § 10. Oregon Supreme Court "cases have held that the complete denial of a remedy [for common law injury to person, property, or reputation] violates the remedy clause." *Horton v. Or. Health & Sci. Univ.*, 359 Or. 168, 219, 376 P.3d 998 (2016).

Page 6 – FINDINGS AND RECOMMENDATION

may consider legislative history, to determine the meaning of a statute. *See, e.g., State v. Gaines*, 346 Or. 160, 171-72, 206 P.3d 1042 (2009); Or. Rev. Stat. § 174.020.

The OTCA does not define the terms "riot," "civil commotion," or "mob action." In fact, "[t]here is little caselaw interpreting this provision, including what constitutes a 'riot, civil commotion or mob action.'" *Cox*, 2022 WL 16552077 at *5 (citing *McCrae v. City of Salem*, 2022 WL 833213, at *7 (D. Or. Mar. 21, 2022)). And the original version of the OTCA did not contain a provision addressing municipal immunity with regard to a riot or civil commotion. Or. Rev. Stat. §§ 30.260 – 30.300 (1967). When the relevant provision of the OTCA was added, the drafter wrote:

> This section is added to preserve immunity from claims arising out of civil disturbances. Preservation of immunity in this instance is common in other states. **It does not bar claims for torts committed by public employees** during the course of civil disturbances but would preclude claims based on a theory that a public body caused or failed to prevent a civil disturbance.

Lo Decl. Ex. 1, at 11 (doc. 65) (emphasis added). Since the provision was originally added in 1969, the amendment has been renumbered and the phrase about vehicle drivers has been added, but the operative language has not changed.[4] *See* Or. Rev. Stat. § 30.265(6).

Thus, as an initial matter, the text, context, and legislative history of Or. Rev. Stat. § 30.265(6)(e) is at odds with the City's assertion of immunity. Stated differently, the Court is not persuaded that the intent of the legislature in passing Or. Rev. Stat. § 30.265(6)(e) was to immunize tortious or unconstitutional behavior conducted by police officers in the course of such events.

---

[4] It is also of note that, "[a]t common law, prior to the enactment of the OTCA in 1968, police officers were not immune from liability for tortious conduct committed within the scope of employment. . . So far as we can tell from the history of this state, police officers have never enjoyed such an immunity." *Rogers v. Saylor*, 306 Or. 267, 274, 760 P.2d 232 (1988); *see also Nelson v. Lane Cnty.*, 304 Or. 97, 107, 743 P.2d 692 (1987) ("an unauthorized intentional intrusion upon one's person, property, or effects is a trespass. The tort traditionally has encompassed a damage action against police officers for exceeding their authority to search and seize").

Page 7 – FINDINGS AND RECOMMENDATION

Additionally, plaintiff is correct that where, as here, there are genuinely disputed facts and the jurisdictional question and substantive issues are intertwined, it is inappropriate for the Court to make a jurisdictional finding on an undeveloped record. Pl.'s Resp. to Mot. Dismiss 19 (doc. 63); *Cox*, 2022 WL 16552077 at *3 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); and *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)). In particular, the parties dispute the nature of plaintiff's and defendants' actions during the demonstration, and resolution of that factual dispute is substantially intertwined with the merits of plaintiff's claims. The City asks this Court to view "[p]laintiff's discussion regarding the nature of the force used on June 26, 2020, PPB's prior or subsequent conduct at other protests, or any conclusions by the U.S. Department of Justice with respect to PPB's training, investigatory or disciplinary processes [as] separate from the jurisdictional issue." Def.'s Reply to Mot. Dismiss 2 (doc. 78). However, the reasonableness or excessive danger of each actor's conduct within the context of the broader events occurring at the time are core elements with regard to both plaintiff's state law and federal constitutional claims.[5]

This case is similar to *Cox* and *McCrae*, which both involved municipalities attempting to raise Or. Rev. Stat. 30.265(6)(e) immunity defenses in relation to tort claims from plaintiffs who sustained injuries at protests. In *McCrae*, District Judge McShane declined to grant OTCA immunity at the summary judgment stage in light of issues of fact surrounding "whether [the police officer's] use of force was reasonable" and "the overall nature of the crowd." *McCrae*, 2022 WL 833213 at *7-8.

---

[5] While not dispositive, the Court denotes that, in regard to the other forms of immunity provided under Or. Rev. Stat. § 30.265(6) – such as the discretionary immunity granted under subsection (c) – the defendant bears the burden of proof, and the establishment of the defense requires a fact-intensive inquiry and fully developed evidentiary record. *See, e.g.*, *Maney v. Brown*, 2020 WL 7364977, *7-13 (D. Or. Dec. 15, 2020).

Page 8 – FINDINGS AND RECOMMENDATION

In *Cox*, District Judge Hernandez held, in regard to a substantively identical Rule 12(b)(1) motion, that "the record is not sufficiently developed for the Court to determine as a matter of law that Plaintiff's claims for battery and negligence arose out of a 'riot, civil commotion or mob action' or 'out of any act or omission in connection with the prevention of' a riot, civil commotion, or mob action," and denied OTCA immunity. *Cox*, 2022 WL 16552077 at *5. Moreover, as Judge Hernandez expressly denoted, *Albers* and *Hicks* "are distinguishable and of limited assistance" in this context. *Id.* at *4. That is, neither case engages in statutory analysis of Or. Rev. Stat § 30.265(6)(e) (previously numbered § 30.265(3)(e)).

For example, the only mention of the provision in *Hicks* is the statement: "Alternatively, Defendants may rely on Or. Rev. Stat. § 30.265(3)(e), which insulates public officers and bodies from liability under State law for '[a]ny claim arising out of riot, civil commotion, or mob action or out of any act or omission in connection with the prevention of any of the foregoing.'" *Hicks*, 2006 WL 3311552 at *16. And *Albers* was decided upon a complete factual record, at the end of a jury trial and on a motion for directed verdict. *Albers*, 546 F. Supp. at 729.

In sum, the record in this case is not sufficiently developed for the Court to determine as a matter of law that plaintiff's state law claims arose out of a "riot, civil commotion or mob action" or "out of any act or omission in connection with the prevention of" a riot, civil commotion, or mob action. While both parties have put forward evidence, document discovery and depositions have not yet taken place. Therefore, dismissal is not warranted on the basis of Or. Rev. Stat. § 30.265(6)(e).

## RECOMMENDATION

For the foregoing reasons, the City's Motion to Dismiss (doc. 16) should be denied. The parties' requests for oral argument are denied as unnecessary.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 26th day of April, 2023.

/s/ Jolie A. Russo  
Jolie A. Russo  
United States Magistrate Judge