**J. Ashlee Albies,** OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1500 SW First Ave. Suite 1000
Portland, Oregon 97204
Telephone: (503) 308-4770

**Viktoria Lo,** OSB No. 175487
Email: vika@vlo-law.com
Viktoria Lo, Attorney at Law LLC
PO Box 86449
Portland, OR 97286
Telephone: 971-245-2085

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MEGHAN OPBROEK**, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation, and<br>**ERIK KAMMERER** in his individual capacity;<br><br>    Defendants. | Case No.  3:22-CV-00610-JR<br><br>**SECOND AMENDED COMPLAINT**<br><br>Violations of Civil Rights: 42 U.S.C § 1983; Battery (state tort); Assault (state tort); Negligence (state tort)<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.

This is a civil rights action. On the evening of June 25, 2020, following the police murder of

George Floyd and as a part of the watershed racial justice protests that followed, Plaintiff

Meghan Opbroek attended a demonstration located at the Portland Police Bureau's North

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

Precinct. There, she joined a group Portlanders in support of Black Lives Matter and against police violence. Within approximately twenty minutes after she arrived, Opbroek witnessed PPB officers subject demonstrators to excessive uses of force, including firing flashbang grenades and impact munitions ostensibly to get the demonstrators to leave, but with the purpose of punishing the protesters. Opbroek filmed the police and stood in passive resistance with demonstrators while chanting and yelling at police officers. In response to Opbroek's First Amendment activity, Defendant Kammerer launched at least one flashbang grenade at her which exploded on her body. As a result of Defendants' conduct, Opbroek suffered severe pain, and physical and mental harms.

## PARTIES

2.

Plaintiff Meghan Opbroek (hereinafter "Opbroek" or "Plaintiff"), at the time of filing and at all material times, was a resident of Multnomah County, State of Oregon.

3.

Defendant City of Portland ("City" or "defendant") is and at all material times hereto has been a municipal corporation in the State of Oregon. The Portland Police Bureau ("PPB"), a department of the City, is the law enforcement agency of the City.  As a local governmental entity, the City of Portland is a suable person under 42 U.S.C. § 1983. At all material times, the City of Portland employed the defendant officer Erik Kammerer. At all material times, the defendant officer Erik Kammerer was acting pursuant to the City of Portland's laws, customs, and/or policies. Per ORS 30.285(1), the city must indemnify its officers for their tortious acts and is therefore liable for the purposes of this action by Plaintiff. On information and belief, the decision to use force against Plaintiff was made at a sufficiently high level as to be policy decision of the City of Portland.

/ / /

PAGE - 2   SECOND AMENDED COMPLAINT

4.

Defendant officer Erik Kammerer was or at all material times hereto was a PPB officer, employee, and agent of the PPB acting under color of law and are sued in his individual capacity.

**TORT CLAIM NOTICE**

5.

Prior to the institution of this action, Plaintiff provided timely notice of her claim to all necessary parties pursuant to ORS 30.275.

**FACTUAL ALLEGATIONS**

6.

Meghan Opbroek is a white woman and advocate for racial equality and justice. She is a Clinical Mental Health Therapist and Academic and Career Advisor. Having lived a majority of her life in Oregon and with an awareness of Oregon's racist history, Opbroek believes it is her duty and responsibility to support the Black Lives Matter movement.

7.

On May 25, 2020, Minneapolis Police Department Officer Derek Chauvin knelt on the neck of a Black man named George Floyd while Mr. Floyd repeatedly said he could not breathe and begged for his mother. Video footage of the last moments of Mr. Floyd's life spread over the internet and sparked outrage and mass demonstrations across the country and the globe, including in Portland, Oregon.

8.

Beginning around May 29, 2020, and for approximately one hundred days, people protested and demonstrated in Portland, declaring Black Lives Matter, demanding justice for George Floyd, demanding justice for those killed by PPB officers, and demanding an end to police violence often with specific calls to defund PPB and abolish the police ("the demonstrations").

PAGE - 3   SECOND AMENDED COMPLAINT

9.

The demonstrations routinely occurred at symbolic locations, such as the Multnomah County "Justice Center" in downtown Portland which houses PPB's central precinct and the Multnomah County Sheriff's Office and jail, as well as the PPB's North Precinct building located in a historically Black and African American neighborhood.

10.

In the weeks following the police killing of George Floyd, Opbroek regularly attended and supported the demonstrations in support of Black Lives Matter. Opbroek attended the demonstrations in solidarity with demonstrators protesting against police violence and demanding systemic change.

11.

On or around the evening of June 25, 2020, Opbroek attended a demonstration in downtown Portland at the Multnomah County Justice Center. As she left the demonstration late that evening, Opbroek heard of another demonstration occurring at PPB's North Precinct, which was near her home. She decided to attend.

12.

Around approximately 1:10 am in the early hours of June 26, 2020, Opbroek arrived at the area around North Precinct on NE Martin Luther King, Jr. Boulevard and NE Emerson Street. There, Opbroek encountered PPB officers in riot gear, lined up on NE Martin Luther King Jr. Boulevard.

13.

Within minutes of her arrival, PPB officers forcibly moved demonstrators north on NE Martin Luther King Jr. Boulevard. Opbroek witnessed PPB officers firing flashbang grenades and other impact munitions directly into the crowd of people. Opbroek witnessed PPB officers shoving demonstrators to the pavement and curbs and witnessed PPB officers firing impact munitions against people who were already on the ground or already moving north on the street. Prior to

PAGE - 4   SECOND AMENDED COMPLAINT

these uses of force, Opbroek had not witnessed any demonstrators engaging in any threatening behavior; rather, she had observed the demonstrators around her engaging in passive resistance, refusing to leave, chanting, and yelling at the police officers.

14.

During this time, at least two PPB officers forcefully and repeatedly shoved Opbroek as she was walking away from the police and in the direction the police told demonstrators to move.

15.

PPB officers then stopped forcefully moving members of the crowd and lined up across NE Martin Luther King Jr. Boulevard. Opbroek stood with a crowd of demonstrators toward the front of the crowd near NE Killingsworth Street, facing the police line, and filming with her cell phone. PPB announced an "unlawful assembly" and ordered demonstrators to disperse, but Opbroek and many people did not. Instead, Opbroek and demonstrators near her continued to stand there, chanting and yelling at the police. Phrases chanted and yelled at the police officers included: "Black Lives Matter," "ACAB, all cops are bastards," "who's streets, our streets," "quit your jobs," "fuck you," "murders," "who do you protect, who do you serve," "bitches," and "fascist pigs."

16.

Opbroek continued to chant and shout—including shouting "I live here, you leave"—while standing a distance from the police line toward the front of the crowd with a few demonstrators in front of her. PPB officers then launched at least one weapon at the demonstrators. The weapon landed at the feet of demonstrators in front of Opbroek, producing smoke at their feet and legs. Those demonstrators and Obproek started walking backwards away from the police and north on NE Martin Luther King Jr. Blvd.

/ / /

/ / /

PAGE - 5   SECOND AMENDED COMPLAINT

17.

Seconds later, Obproek turned away from the police in order to continue moving in the direction the police had told the demonstrators to go. As Opbroek turned north and away from the police, Erik Kammerer fired a flashbang grenade (or, as PPB calls this weapon, an "RBDD" or "stingball grenade"), that exploded on or near Opbroek, seriously injuring her.

18.



Figures 1 and 2: Images of Opbroek's leg injuries within minutes of Defendants' use of force against her.

The flashbang grenade and the exploding shrapnel burned Opbroek, gouged, or blew off chunks of her flesh from her legs and caused additional physical injury to her head and chest. She temporary lost her vision and hearing, was disoriented, felt her chest burning, and struggled to move. As a result of Defendants' conduct, Opbroek suffered emotional distress, severe pain,

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

physical wounds to multiple parts of her body, including her head, nerve damage, a concussion, and a traumatic brain injury.

19.

At the time PPB subjected Opbroek to force and injured her, she had been retreating from the police and was not engaged in active aggression, nor did she pose a threat to officers or other demonstrators, and had been filming the police with her phone in hand.

20.

At all material times including the evening of June 25, 2020 during the demonstrations at North Precinct, Defendant Kammerer knew or should have known that firing flashbang grenades at protesters engaged in passive resistance was unconstitutional and likely to cause harm, but fired the grenade at Opbroek anyway.

21.

Defendant Kammerer has a history of violence and unconstitutional force against people involved and around protests both before and after this incident.[1] Upon information and belief, Defendant Kammerer also approved and encouraged other incidents of excessive force against demonstrators. During the protests following the death of George Floyd in 2020, the City designated Defendant Kammerer as Officer "67" in its effort to anonymize PPB officers and withhold their identities from the public. Many demonstrators, including Plaintiff, knew Officer "67" as an individual PPB officer who regularly engaged in aggressive, violent, and inappropriate behavior towards demonstrators.[2] Defendant Kammerer has also been the subject of various excessive force complaints—including complaints that he used excessive force

---

[1] Latisha Jensen, *Witnesses and Photos Confirm the Identity of an Aggressive Officer Wearing Helmet Number 67*, Willamette Week (November 4, 2020), available at https://www.wweek.com/news/2020/11/04/witnesses-and-photos-confirm-the-identity-of-an-aggressive-officer-wearing-helmet-number-67/.
[2] *See id.*

PAGE - 7   SECOND AMENDED COMPLAINT

against other racial justice demonstrators in 2020.[3] Despite this, upon information and belief, the City has not disciplined Defendant Kammerer for his conduct against protesters.

22.

Despite firing a flashbang grenade directly at Opbroek's body and causing obvious physical injuries, Defendant Kammerer failed to aid Opbroek or provide her assistance. Defendant Kammerer and other PPB officers failed to render emergency medical aid to Opbroek as she limped past a line of dozens of PPB officers while clearly bleeding from her bare legs. Instead, other demonstrators who saw Opbroek called out, "she's bleeding" and "medic," and at least one protest medic attended to her wounds, which were freely bleeding. PPB continued to shoot flashbang grenades and so-called "less lethal" munitions indiscriminately into the crowd of demonstrators.

23.

Opbroek then went to the Emergency Room where providers gave her pain medication and treated her for multiple wounds and a head contusion.

24.

On June 29, 2020, Opbroek received additional treatment to the wounds on her legs and chest. On or around that date, she was also diagnosed with a concussion as a result of the incident.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] *See id.;* Tess Riski, *Oregon DOJ Investigation Finds "Insufficient Evidence" to Charge Portland Police Detective Erik Kammerer, Known as "Officer 67,"* WILLAMETTE WEEK (Feb. 25, 2022) available at https://www.wweek.com/news/courts/2022/02/25/oregon-doj-investigation-finds-insufficient-evidence-to-charge-portland-police-det-erik-kammerer-known-as-officer-67/.

PAGE - 8   SECOND AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292



Figure 3: Images of injuries to Opbroek's chest, taken on approximately June 26, 2020.

25.

As a result of Defendants' conduct, Opbroek has had to seek continuous follow-up medical treatment on multiple occasions after the incident. Opbroek also has permanent scars on multiple places on her body.

26.

As a result of Defendants' use of force, Opbroek suffered mental and physical harms, severe pain, wounds, and a concussion, resulting in loss of income, the incursion of out-of-pocket expenses, and her inability to conduct daily life activities continuing to present.

27.

All flashbang grenades, whether they contain a gas, rubber bullets, or nothing at all inside, use military grade fuses and are classified as a destructive device and explosive by the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). PPB officers should have been trained that because flashbangs are quite capable of killing, maiming, and blinding people when they

PAGE - 9   SECOND AMENDED COMPLAINT

explode on a person's body,[4] flashbang grenades should be used with great restraint and as a last available force option in a crowd of civilians at a protest. Instead, PPB officers were trained not to fire flashbang grenades within five feet from a person in trainings that did not prepare them to accurately deploy the device in a rapidly changing environment.

a.  PPB officers should have been trained that deployment of a flashbang at a crowd of protesters is so inherently dangerous that flashbangs should only be used in circumstances where the operator can control the trajectory of the grenade with reasonable certainty and where unintended targets are not near the trajectory of the explosive.

b.  PPB's qualifications course only included training on static targets and did not include training where both officers and targets were in motion. PPB has failed to adequately train its officers to account for the following factors in their deployment of flashbang grenades in "crowd control" situations:

i.  The movement of individuals in the crowd,

ii.  Officer throwing the grenade being unable to control where the rubber body of the grenade will bounce to and ultimately where it explodes,

iii.  Because the grenade's process of explosion is twofold – the *flash*, as the fuse separates, followed by the *bang* of the explosion – the fuse separating causes the grenade to travel in a yet another uncontrollable way,

iv.  The inherent danger of throwing the flashbang grenades at protesters from a moving police vehicle,

---

[4] Liz Jones and Isolde Raftery, *This woman 'died three times' after Seattle Police hit her with a blast ball*, KUOW NPR Network (Jun. 10, 2020) available at *https://www.kuow.org/stories/this-26-year-old-died-three-times-after-police-hit-her-with-a-blast-ball.*

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

v. The inherent danger of throwing flashbang grenades at protesters during the police squad's tactical movements forward toward people who the police is trying to disperse from an area,

vi. And finally the lack of officer control over where the rubber bullets ejected from the grenade will hit on any individual person's body, creating a risk of soft tissue damage to people.

c. This failure to train to account for motion and the unpredictable nature of the explosive device, even in the face of protesters being repeatedly injured by PPB flashbangs, amounted to deliberate indifference to the Constitutional rights of demonstrators on the part of the City.

28.

The City took no action in response to multiple citizen complaints dating back to 2014 regarding PPB officers hitting non-violent protesters with flashbangs. The City of Portland's PPB has never disciplined, counseled, or debriefed an officer for their use of flashbangs. The City's tacit acquiescence to its officers' misuse of flashbang devices that injured protesters led to officers using flashbangs seemingly indiscriminately in densely crowded urban environments in the summer of 2020. As late as August 2018, PPB and Defendant City knew there to be a problem with PPB officers firing flashbang grenades directly at people and causing serious injuries. Yet, following incidents of officers firing as many as nine to twelve flashbangs directly into a crowd on August 4, 2018 and hitting a person in the brain through a thick helmet with a flashbang, PPB failed to discipline, counsel, or reprimand the involved officers. PPB has never used a citizen complaint about the use of flashbang grenades as an opportunity to train, counsel, or reprimand its officers against throwing flashbangs in circumstances where people are densely crowded together and the officers cannot with reasonable certainty control the placement of the flashbang's explosion.

PAGE - 11   SECOND AMENDED COMPLAINT

29.

Complaints submitted to the City of Portland's Independent Police Review ("IPR") show a pattern off PPB officers using flashbang grenades and other weapons specifically against Black Lives Matter and left-leaning protesters. People have reported being hit directly by the explosion of the flashbang and shrapnel from flashbangs.

a.  Documented IPR complaints dating back to the *Ferguson* solidarity protests in 2014 and 2015 show that the City's officers have injured multiple people at Black Lives Matter protests with flashbang grenades.[5]

b.  On May 1, 2015 at a protest following the police murder of Freddie Gray, Portland Police used flashbangs against Black Lives Matter demonstrators.[6]

c.  Following Donald Trump's election, Portland Police injured anti-Trump election day and inauguration day demonstrators with flashbang grenades in 2016 and 2017. On September 7, 2017 when right wing group Patriot Prayer gathered in Portland and Portlanders came out to rally against the right wing groups, a Portland Police officer threw a flashbang grenade directly at a member of the press who was filming officers making an arrest at the rally.[7]

d.  On August 4, 2018, when Patriot Prayer and Proud Boy supporters mounted the MAX with assault rifles to hold a fully armed rally at Terry Shunk Plaza, Portland Police fired multiple flashbang grenades into the dense crowd of counter-demonstrators while trying

---

[5] Bryan Denson, *Portland Police Lob 'Flash Bang' Grenades To Force Ferguson Verdict Protesters Out Of Downtown*, THE OREGONIAN (Nov. 30, 2014), available at: https://www.oregonlive.com/portland/2014/11/portland_police_lob_flash_bang.html

[6] Nick Budnick, *Portland May Day Marchers Clash With Police, Disrupt Traffic And Transit*, THE OREGONIAN (May 1, 2015), available at: https://www.oregonlive.com/today/2015/05/portland_may_day_protests_set.html

[7] Conrad Wilson, *Portland Officer Use Of Distraction Grenade During Protest Under Review*, OPB (September 13, 2017), available at: https://www.opb.org/news/article/portland-grenade-flash-bang-protest-film-maker-investigation/

PAGE - 12    SECOND AMENDED COMPLAINT

to clear them from the area. One of these flashbangs lodged in Aaron Cantu's skull through his bike helmet.[8] Multiple people filed complaints regarding PPB launching flashbangs directly into a dense crowd of hundreds of people, yet PPB failed to find a single officer out-of-policy because the officers who used force "could not be identified."

e.  Portland Police used flashbang grenades over one hundred times against Black Lives Matter demonstrators in the thirty day period between June 1, 2020 and June 30, 2020 and over 200 times in the three months between May 29, 2020 and September 1, 2020. Some of these uses resulted in complaints filed by demonstrators who were injured by flashbangs exploding in close proximity to their bodies. Portland took no action in response to find a single officer out of policy for flashbang use.

f.  Finally, after a flashbang exploded on Plaintiff's body on June 26, 2020, a Portland Police officer fired another flashbang directly into a crowd of protesters who were gathered at the site of a police killing in Lents park on April 16, 2021.[9]

Despite repeated citizen complaints to the Portland Independent Police Review, police and City officials continuously failed to counsel, guide, reprimand, or discipline Portland Police members for being "out of policy" or "inconsistent with training" for their uses of flashbang grenades against protesters. Portland Police continued to sanction the use of flashbangs until state law changed to disallow certain flashbangs, the RBDDs specifically, from being used in crowd control. Even today, Portland Police continues to arm its officers with flashbangs and allows for their use in crowd control, having rebranded a device that uses the same explosive fuse as "Flash Sound Diversionary Devices."

---

[8] Shane Dixon Kavanaugh, *Portland Protester Who Says Flash-Bang Grenade Split His Skull Plans To Sue Cops*, The Oregonian (Sept. 19, 2018), available at:
https://www.oregonlive.com/portland/2018/09/portland_protester_who_says_fl.html
[9] Chris Boyette, *Portland Police Disperse Crowd With Pepper Spray After Officer Fatally Shoots Suspect*, CNN (April 17, 2021), available at:
https://www.cnn.com/2021/04/16/us/portland-protest/index.html

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**FIRST CLAIM FOR RELIEF**
**(Fourth Amendment Violation – Excessive Force – 42 USC § 1983)**

**Count 1: Individual Liability Against Defendant Kammerer**

30.

Plaintiff realleges and incorporates by reference the above paragraphs.

31.

Plaintiff has a right to be free from unreasonable force as guaranteed by the Fourth Amendment

to the United States Constitution.

32.

As alleged above, Defendants violated Plaintiff's rights to be free from undue and unreasonable

force. Defendants' use of force was objectively unreasonable under the circumstances,

unjustifiable, and constituted unlawful seizure and excessive force.

33.

At all material times, the law was clearly established that Defendants' use of force, in the

manner and under the circumstances used against Plaintiff, who was nonviolent and attempting

to comply, was objectively unreasonable, and any reasonable law enforcement officer would

have known that the force used against Plaintiff was unreasonable and violated her clearly

established Fourth Amendment rights.

34.

Defendants' conduct caused Plaintiff bodily harm and emotional distress in an amount to be

determined at trial.

35.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 USC § 1988.

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**Count 2: Municipal Liability Against Defendant City of Portland – Unlawful Practice or Policy Allowing Use of Force as a Crowd Dispersal Tactic**

36.

The City of Portland's use of force policy authorized the use of flashbangs in crowd control "under the direction of the Crowd Management Incident Commander (CMIC), to disperse a crowd, when a demonstration or event becomes a civil disturbance." The City's officers have repeatedly injured protesters with flashbangs. Yet, the City of Portland has never disciplined, issued corrective action, or terminated its officers on their decisions to use flashbangs. Out of hundreds of flashbang uses by PPB and dozens of citizen complaints, PPB has never found an officer's use of a flashbang to be "out-of-policy." Therefore the City was aware of, acquiesced to, and condoned PPB officers' pattern of using of flashbangs in crowds, even when non-violent demonstrators, who were clearly not the intended targets of the flashbangs, have been critically injured.

PPB's actual widespread practice and custom is to allow the use of flashbang grenades against members of a crowd both before and after an "unlawful assembly" and/or a "civil disturbance" has been declared, even when a substantial number of people in that crowd are engaged only in the passive resistance to an order to leave the area. The City has shown deliberate indifference to the rights of protesters by failing to train its officers to use flashbangs with restraint and precision in crowded, rapidly changing and moving, urban settings. The City has shown deliberate indifference to or reckless disregard for the constitutional rights of protesters by repeatedly failing to discipline, reprimand, train, or discharge officers for using flashbang grenades against non-violent protesters.

37.

On the date of the incident alleged, approximately June 25 into the early hours of June 26, 2020, PPB deployed flashbang grenades on demonstrators engaging in passive resistance and continued to deploy flashbang grenades on people moving away in retreat of the police, which is

PAGE - 15   SECOND AMENDED COMPLAINT



consistent with PPB officers' widespread custom of using flashbang grenades in a so-called "crowd control" context. The City has tacitly and explicitly authorized this use of force and knew or reasonably should have known that it would lead to the constitutional violations alleged herein. Upon reviewing Opbroek's complaint, the City closed the investigation without any discipline, training, or official action. The closure of Opbroek's complaint mirrored the City's lack of action in response to other protesters' complaints since 2014 alleging that the City's officers hit them with flashbangs without justification. When IPR "could not" identify involved officers, the complaints were stalled and closed. The City did nothing to institute policies that made officer uses of force more easy to track and investigate in crowd control settings. Instead, the Portland Police failed to properly uphold documentation requirements of uses of force during crowd control settings. By its repeated failures to train and discipline and its acquiescence in the failure to adequately track and report flashbang use, the City, acting pursuant to this policy, custom, or practice, unlawfully used this weapon against Plaintiff as alleged above.

**Count 3: Municipal Liability Against Defendant City of Portland –
Action of Policymaking Officials**

38.

The decision to use flashbang grenades against Plaintiff was made by officials of the PPB who are sufficiently senior that the decision may fairly be said to represent official policy of the City of Portland. Former PPB Chief Jami Resch was, and PPB Chief Chuck Lovell is the highest level of authority within the PPB, and mayor of Portland Ted Wheeler, also the Police Commissioner, has acknowledged receiving minute-to-minute reports from PPB of events on the ground at protests. The Incident Commander is the City's official delegated with final policy making authority for the decision to authorize the use of flashbangs/RBDDs. The decision to use riot control and "less lethal" weapons was made by official policy makers, the Chief of PPB, the Incident Commander, and the mayor of Portland, who knew or reasonably should have known this would lead to constitutional violations alleged herein.

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

## SECOND CLAIM FOR RELIEF
### (First Amendment Violation – Retaliation Against Speech – 42 USC § 1983)

### Count 1: Individual Liability Against Defendant Kammerer

39.

Plaintiff realleges and incorporates by reference the above paragraphs.

40.

The First Amendment to the United States Constitution protects persons from unlawful

curtailment of expressive conduct, assembly, and association.

41.

Plaintiff was engaged in constitutionally protected acts of free speech, including public

demonstration opposing racism and police violence against Black people.

42.

By targeting and using force against Plaintiff, Defendants chilled her political speech and

violated her First Amendment rights.

43.

Defendants' retaliation directly and proximately caused Plaintiff bodily harm and emotional

distress in an amount to be determined at trial.

44.

Plaintiff is entitled to reasonable attorney fees pursuant to 42 USC § 1988.

### Count 2: Municipal Liability Against Defendant City of Portland –
### Unlawful Policy or Practice

45.

Plaintiff realleges and incorporates by reference the above paragraphs.

46.

The City of Portland has a custom and practice of using indiscriminate and militarized force

against demonstrators critical of the police, as demonstrated by the use of indiscriminate and

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

so-called "less lethal" weapons against those protesting outside of PPB's police precinct in North Portland. Defendants' use of force was intended to punish a group of protesters *en masse* for their political speech, and to deter similar expressions of speech. The decision to fire flashbang grenades into a crowd of protesters and directly at a person's body outside of PPB's North Precinct was made in retaliation for the demonstrators' protected speech condemning the police at a symbolic location of the protest subject matter and to chill the expression of further similar speech.

47.

The City has never used flashbang grenades to disperse crowds of right-wing demonstrators, such as the Proud Boys and Patriot Prayer. Instead, the City has used flashbangs exclusively against Black Lives Matter, anti-police, May Day, and Anti-Trump demonstrators. The City has never disciplined, reprimanded or discharged any officer for any of the dozens of complaints by protesters critical of police, thereby acquiescing to these violations. Moreover, the City has purchased flashbangs and other indiscriminate weapons specifically for the use against Black Lives Matter protests both in 2015 and in 2020. The City's training materials show that it views left-leaning demonstrators as more dangerous and deserving of police violence. Supervisors within Defendant City who authorized and ratified decision to attack the demonstrators critical of the police are sufficiently senior so that their decision can fairly be said to be the official policy of the City of Portland, and they knew or reasonably should have known this would lead to the constitutional violations alleged herein. The City showed deliberate indifference to the Constitutional rights of left-leaning protesters by failing to discipline and train its offers.

48.

The above-described conduct was a proximate cause of harm to Plaintiff.

/ / /

/ / /

PAGE - 18   SECOND AMENDED COMPLAINT

**THIRD CLAIM FOR RELIEF**
**(Battery – State Tort – Against Defendant City of Portland)**

49.

Plaintiff realleges and incorporates by reference the above paragraphs.

50.

Employees and agents of the Defendant City of Portland did unlawfully intend to cause harmful

physical contact with Plaintiff and did cause harmful physical contact by Defendant Kammerer's

intentional act of firing a flashbang grenade at Plaintiff. Such actions were unreasonable and

excessive under the circumstances and were not otherwise privileged or justified.

51.

Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm

and emotional distress in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Assault – State Tort – Against Defendant City of Portland)**

52.

Plaintiff realleges and incorporates by reference the above paragraphs.

53.

Defendant Kammerer, an employee and agent of the Defendant City of Portland intentionally

attempted to cause harmful physical contact with Plaintiff by firing a flashbang grenade at

Plaintiff, while having the present ability and opportunity to carry out the assault, as alleged

above. Such actions were unreasonable and excessive under the circumstances and were not

otherwise privileged or justified.

54.

Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm

and emotional distress in an amount to be determined at trial.

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

55.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorney fees.

## FIFTH CLAIM FOR RELIEF
### (Negligence – State Tort – Against Defendant City of Portland)

56.

Plaintiff realleges and incorporates by reference the above paragraphs.

57.

Defendant Kammerer had a duty of care to Plaintiff. The above-described actions of Defendant Kammerer breached that duty of care.

58.

Defendants' above-described individual or cumulative acts were unreasonable and excessively dangerous in light of the risk to Plaintiff and in light of the purported purposes of the acts.

59.

In performing the above-described individual and cumulative acts, Defendant City's officer directly and proximately caused Plaintiff physical and/or mental harm while infringing on Plaintiff's rights to be free from unlawful violence and to attend and engage in constitutionally protected free-speech activity without threat of retaliation.

60.

The City's inadequate training, supervision, review, or discipline of PPB officers has created a culture and pattern within PPB of officers using excessive force against crowds of demonstrators who support Black Lives Matter or are critical of the police. Additionally, by firing their weapons directly at Plaintiff and directly into a crowd of people, agents of the City created an unreasonable risk of harm against Plaintiff and all those present.

61.

Plaintiff's physical and mental harms and injuries were within the general type of potential incidents and injuries that made Defendants' conduct negligent. That is, the acts of Defendant



ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

City's officer in using indiscriminate and "less lethal" weapons for "crowd control" and collective punishment, as described above, against Black Lives Matters demonstrators or demonstrators critical of the police and/or persons engaged in passive resistance created a foreseeable and unreasonable risk of physical and mental harm that reasonably would likely result in infringements of Plaintiff's rights to be free from unreasonable force by the government and Plaintiff's right to attend and engage in constitutionally-protected free-speech activity without threat of chill or retaliation.

62.

Defendant City is vicariously and directly liable to Plaintiff for the conduct of Defendant Kammerer.

63.

In performing the above-described acts, Defendants directly and proximately caused Plaintiff to suffer physical and mental harms and economic and non-economic damages. Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

64.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1.      Economic damages,

2.      Non-Economic damages,

3.      Attorney's fees,

4.      Prejudgment and post judgement interest as appropriate and allowed by law,

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

5.      On all claims, as applicable, amounts necessary to offset the income tax

consequences of receiving a lump sum payment, rather than receiving payment of

wages over the applicable time frame; and

6.      Any other relief the court deems proper.

**DATED** this 17th day of January 2025.

s/ *Maya Rinta*
**Maya Rinta,** OSB No. 195058
**J. Ashlee Albies,** OSB No. 051846
**Viktoria Lo,** OSB No. 175487

*Attorneys for Plaintiff*

PAGE - 22   SECOND AMENDED COMPLAINT